## METROPOLITAN LIFE INSURANCE COMPANY *v.* AETNA CASUALTY AND SURETY COMPANY ET AL.
## (SC 16006)

Berdon, Norcott, Katz, Palmer and McDonald, Js.

---

Argued December 10, 1998—officially released May 25, 1999

*Francis J. Brady*, with whom were *Randy K. Paar*, pro hac vice, and, on the brief, *Jerold Oshinsky*, pro hac vice, *Everett E. Newton, David L. Elkind*, pro hac vice, *Eugene Anderson*, pro hac vice, and *Mark Garbowski*, pro hac vice, for the appellant (plaintiff).

*Stephen A. Fennell,* pro hac vice, with whom were *John B. Farley* and, on the brief, *Errol R. Patterson,* pro hac vice, and *Shannen W. Coffin,* pro hac vice, for the appellees (defendant The Home Insurance Company et al.).

*William C. Eustace* and *John E. Heintz* filed a brief for Lone Star Industries, Inc., et al. as amici curiae.

*Opinion*

BERDON, J. This is an interlocutory appeal by the plaintiff, Metropolitan Life Insurance Company, from the discovery order of the trial court requiring the plaintiff to disclose certain documents in an insurance coverage dispute between the plaintiff and the defendants,[1] the plaintiff's second level excess general liability insurers. The two dispositive issues on appeal are: (1) whether this court has jurisdiction over this appeal; and, if it does, (2) whether these documents, which consist of written communications between the plaintiff and its attorneys regarding settlements of more than 200,000 underlying actions in which parties sought damages for personal injuries caused by asbestos exposure, are protected from discovery by the attorney-client privilege. We conclude that this court has jurisdiction over this appeal. We further conclude that the relevant documents are protected by the attorney-client privilege.

---

[1] The following are the defendant insurers in the present case: Aetna Casualty and Surety Company, Allianz Insurance Company, Allianz Underwriters Insurance Company, American Centennial Insurance Company, Arkwright Boston Manufacturers Mutual Insurance Company, Century Indemnity Company, City Insurance Company, Commercial Union Insurance Company, CCI Insurance Company, Forum Insurance Company, Continental Insurance Company, Fireman's Fund Insurance Company, Greenwich Insurance Company, Hartford Accident and Indemnity Company, Highlands Insurance Company, The Home Insurance Company, Insurance Company of North America, International Insurance Company, National Union Insurance Company of Pittsburgh, Pennsylvania, New England Insurance Company, New England Reinsurance Company, Pacific Employers Insurance Company and Royal Indemnity Company.

The record reveals the following facts and procedural history. During the last two and one-half decades, more than 200,000 claimants have sued the plaintiff in tort for its alleged intentional and/or negligent participation in a conspiracy to conceal the dangers of asbestos from the public (hereinafter asbestos tort actions). More specifically, the claimants in the asbestos tort actions generally have alleged that the conspiracy evolved from the asbestos industry's funding of researchers who were likely to find that asbestos was not harmful, and the industry's withdrawal or refusal to fund those researchers who were likely to report the harm caused by asbestos. According to the claimants, Anthony Lanza, a research scientist who was the medical director of the plaintiff's health department during the late 1920s to the late 1940s, was at least peripherally involved in organizations funded by the asbestos industry that disclaimed any harmful effects of asbestos. The claimants in the asbestos tort actions alleged that the plaintiff, as a result of Lanza's participation in the conspiracy, owed them a duty to disclose generally the harmful effects of asbestos and it failed to do so.

In addition to these 200,000 cases, new asbestos tort actions are being brought against the plaintiff at the rate of approximately 20,000 per year. To date, the plaintiff has taken only two such asbestos tort actions to verdict. The plaintiff settled or is in the process of settling almost all of these claims for a nominal value of approximately $2000 per claim, but because of the vast number of asbestos tort actions that have been and continue to be filed, it is estimated that costs of settling these claims could be as much as one billion dollars. During the years for which the plaintiff is claiming second level excess insurance coverage by the defendants, it also had primary, umbrella and first level excess general liability coverage from The Travelers

Insurance Company and The Travelers Indemnity Company (collectively, Travelers). Travelers, who has settled its earlier coverage dispute with the plaintiff, is now participating in the defense of the asbestos tort actions.

As the aggregate cost of the settlements became increasingly enormous, the plaintiff began to look to the defendants, its second level excess liability insurers, for coverage of the asbestos tort actions. The defendants, however, failed to participate in the defense of these claims by either denying coverage or reserving their rights to deny it in the future.[2] The plaintiff brought this action against the defendants seeking: (1) a declaratory judgment that the defendants must defend and indemnify the plaintiff in the asbestos tort actions; and (2) damages for breach of contract. The present case not only raises complex issues relating to coverage and the reasonableness of the settlements reached by the plaintiff with respect to the asbestos tort actions, but also other intricate issues as well.[3]

As a part of a joint effort to manage the large volume of discovery documents in this complex litigation, the plaintiff prepared and produced a log covering the documents requested by the defendants that it claimed were privileged (privilege log). This two page categorical privilege log lists fifteen categories of documents and covers more than 100 boxes of documents that relate to the defense and settlement of the asbestos tort actions. The plaintiff specifically claims that these documents are protected by the attorney-client privilege.[4]

---

[2] The parties disagree as to whether the defendants have denied coverage or reserved their rights to deny it in the future.

[3] These issues include the allocation of coverage under the policies of the defendants where coverage extended over varying and limited times during a thirty year period.

[4] The plaintiff also raises claims that the documents are protected by the work product doctrine, an issue we do not reach. See footnote 17 of this opinion.

Thereafter, the defendants moved to compel production of the withheld documents, claiming that the plaintiff had incorrectly asserted that they were privileged. The trial court granted the motion to compel, subject to a protective order that prohibits disclosure to others, with respect to seven of the fifteen categories of documents that involve information that the plaintiff furnished to its attorneys, as well as advice given by its attorneys to the plaintiff regarding the settlements of the asbestos tort actions.[5] Subsequently, the plaintiff reargued the motion, and the trial court, on September 2, 1998, reaffirmed its original ruling as set forth in a written memorandum of decision dated October 13, 1998.

On September 16, 1998, the plaintiff applied for certification to appeal, pursuant to General Statutes § 52-265a (a), which provides generally that interlocutory orders and decisions of the trial court may be appealed to this court upon certification by the chief justice when the appeal "involves a matter of substantial public interest and . . . delay may work a substantial injustice

---

[5] On July 20, 1998, the trial court ordered disclosure, under seal, of the following document categories:

"(1) Communications among members of the [plaintiff's] Law Dept., or between the Law Dept. and other employees of [the plaintiff] relating to legal advice involving the [asbestos tort actions], coverage cases and/or their settlement . . .

"(5) Communications among underlying Asbestos Defense Counsel, [the plaintiff's] Law Dept. and/or [Travelers] relating to legal advice regarding defense and/or settlement of [asbestos tort actions];

"(6) Communications among [the plaintiff's] Law Dept. and/or [the plaintiff] and [Travelers] relating to legal advice regarding defense and/or settlement of [asbestos tort actions] . . .

"(8) Factual and Legal Research prepared by or for [the plaintiff's] Law Dept. relating to the [asbestos tort actions] . . .

"(10) Factual and Legal Research prepared by or for [the plaintiff's] Law Dept. regarding settlement of the [asbestos tort actions] . . .

"(12) Factual and Legal Research of underlying Asbestos Defense Counsel regarding the [asbestos tort actions];

"(13) Factual and Legal Research of underlying Asbestos Defense Counsel regarding the settlement of [asbestos tort actions] . . . ."

. . . ."[6] While the § 52-265a application was still pending, the plaintiff appealed to the Appellate Court, pursuant to General Statutes § 52-263 (final judgment appeal),[7] claiming that the trial court incorrectly ordered the plaintiff to produce documents listed on the privilege log. On September 23, 1998, this court simultaneously denied without prejudice the plaintiff's application for certification to appeal pursuant to § 52-265a,[8] citing *Hall* v. *Gilbert & Bennett Mfg. Co.*, 241

---

[6] General Statutes § 52-265a provides: "Direct appeal on questions involving the public interest. (a) Notwithstanding the provisions of sections 52-264 and 52-265, any party to an action who is aggrieved by an order or decision of the Superior Court in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice, may appeal under this section from the order or decision to the Supreme Court within two weeks from the date of the issuance of the order or decision. The appeal shall state the question of law on which it is based.

"(b) The Chief Justice shall, within one week of receipt of the appeal, rule whether the issue involves a substantial public interest and whether delay may work a substantial injustice.

"(c) Upon certification by the Chief Justice that a substantial public interest is involved and that delay may work a substantial injustice, the trial judge shall immediately transmit a certificate of his decision, together with a proper finding of fact, to the Chief Justice, who shall thereupon call a special session of the Supreme Court for the purpose of an immediate hearing upon the appeal.

"(d) The Chief Justice may make orders to expedite such appeals, including orders specifying the manner in which the record on appeal may be prepared."

[7] General Statutes § 52-263 provides: "Appeals from Superior Court. Exceptions. Upon the trial of all matters of fact in any cause or action in the Superior Court, whether to the court or jury, or before any judge thereof when the jurisdiction of any action or proceeding is vested in him, if either party is aggrieved by the decision of the court or judge upon any question or questions of law arising in the trial, including the denial of a motion to set aside a verdict, he may appeal to the court having jurisdiction from the final judgment of the court or of such judge, or from the decision of the court granting a motion to set aside a verdict, except in small claims cases, which shall not be appealable, and appeals as provided in sections 8-8 and 8-9."

[8] Although § 52-265a provides that the chief justice shall rule on such a certification, both Chief Justice Callahan and Justice Borden, who is the most senior associate justice, recused themselves from this case. Therefore, Justice Berdon, the next most senior justice, acted on the application for

Conn. 282, 695 A.2d 1051 (1997), and transferred to this court, pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c), the plaintiff's final judgment appeal brought to the Appellate Court.[9]

On appeal, the plaintiff claims that the trial court discovery order is an appealable final judgment, pursuant to § 52-263, as set forth in *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). In the alternative, the plaintiff asserts that its appeal should be allowed pursuant to § 52-265a.[10] The defendants, however, maintain that the present action is not appealable under either statute. We agree with the defendants that the discovery order in the present case is not a final judgment and is, therefore, not appealable under § 52-263. We agree with the plaintiff, however, that the present appeal should be certified pursuant to § 52-265a, as set forth in part I of this opinion.

Beyond the issue of jurisdiction, the plaintiff argues on the merits that the trial court improperly ordered disclosure in violation of the attorney-client privilege. The defendants claim that the documents are discoverable because: (1) the "at issue" exception to the attorney-client privilege applies; (2) the cooperation

certification. Although Justice Berdon is authorizing certification pursuant to § 52-265a, this opinion will refer to the entire panel regarding this issue because of the concurrence of the other justices.

[9] Practice Book § 65-1 provides: "When, pursuant to General Statutes § 51-199 (c), the supreme court (1) transfers to itself a cause in the appellate court, or (2) transfers a cause or a class of causes from itself to the appellate court, the appellate clerk shall notify all parties and the clerk of the trial court that the appeal has been transferred. A case so transferred shall be entered upon the docket of the court to which it has been transferred. There shall be no fee on such transfer. The appellate clerk may require the parties to take such steps as may be necessary to make the appeal conform to the rules of the court to which it has been transferred, for example, supply the court with additional copies of the record and the briefs."

General Statutes § 51-199 (c) provides in relevant part: "The Supreme Court may transfer to itself a cause in the Appellate Court. . . ."

[10] See footnote 6 of this opinion for text of § 52-265a.

clauses in the insurance policies between the plaintiff and the defendants precluded the plaintiff from having a reasonable expectation of confidentiality regarding the documents when the plaintiff settled the asbestos tort actions and, therefore, the attorney-client privilege never attached; (3) the "common interest" exception to the attorney-client privilege applies; and/or (4) the plaintiff's disclosure of certain categories of documents listed on the privilege log to Travelers waived the plaintiff's right not to disclose them to the defendants, who are also its insurers.[11] We agree with the plaintiff that the attorney-client privilege insulates these documents from disclosure, as we discuss in part II of this opinion.

## I

We first must address the issue of this court's jurisdiction over the present case. It is well established that the subject matter jurisdiction of the Appellate Court and of this court is governed by § 52-263, which provides that an aggrieved party "may appeal to the court having jurisdiction from the final judgment of the court . . . ."[12] Accordingly, the general rule is that appellate jurisdiction is limited to final judgments of the trial court. *Presidential Capital Corp.* v. *Reale*, 240 Conn. 623, 627, 692 A.2d 794 (1997). "The principles that govern appellate jurisdiction are well established. [T]he subject matter jurisdiction of the Appellate Court and of this court is governed by statute. . . . It is . . . axiomatic that, except insofar as the legislature has specifically provided for an interlocutory appeal or other form of interlocutory appellate review; see, e.g., General Statutes § 52-278*l* (prejudgment remedies); General Statutes § 54-63g (petition for review of bail); General Statutes § 51-164x (court closure orders); *State*

---

[11] The defendants offer arguments three and four as alternative grounds for affirmance.

[12] See footnote 7 of this opinion for the complete text of § 52-263.

v. *Ayala*, 222 Conn. 331, 340, 610 A.2d 1162 (1992); appellate jurisdiction is limited to final judgments of the trial court. General Statutes § 52-263 . . . ." (Citation omitted; internal quotation marks omitted.) *Presidential Capital Corp.* v. *Reale*, supra, 627.

We previously have determined that certain interlocutory orders have the attributes of a final judgment and consequently are appealable under § 52-263. In *State* v. *Curcio*, supra, 191 Conn. 31, we explicated two situations in which a party can appeal an otherwise interlocutory order: "(1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." The plaintiff claims that its appeal meets the second prong of the *Curcio* test for finality because, if the privileged information in question were disclosed, even under a protective order, the plaintiff's right to confidentiality in the asbestos tort actions would be immediately and permanently compromised. Although we recognize that the plaintiff's confidentiality in the relevant documents could be compromised in foreign jurisdictions because Connecticut's protective order does not extend beyond its borders, this is true for any discovery order with a protective order. Moreover, further proceedings can affect the rights of the parties in the present case because the plaintiff, if aggrieved by the trial court's final decision, could appeal this discovery order after the final disposition of this case as it would any other nonfinal interlocutory order. Consequently, we hold that this court has no jurisdiction over the present appeal pursuant to § 52-263.

Our conclusion is supported by our decision in *Melia* v. *Hartford Fire Ins. Co.*, 202 Conn. 252, 520 A.2d 605 (1987). In *Melia*, which also involved an appeal from a trial court order to produce files protected by the attorney-client privilege within an insurance coverage dispute, we found that the appellants failed to meet the

second prong of *Curcio*. Id., 259. We explained in *Melia* that "[o]ur concern for the efficient operation of the judicial system, which is the practical consideration behind the policy against piecemeal litigation inherent in the final judgment rule, has induced us to dismiss appeals where statutorily created rights of privacy, no less significant than the right of confidentiality for attorney-client communications, have been at stake." Id., 258. We also have held in numerous other cases that there is generally no right to an interlocutory appeal from an order issued upon a discovery motion. See, e.g., *Presidential Capital Corp.* v. *Reale*, supra, 240 Conn. 633; *State* v. *Grotton*, 180 Conn. 290, 296, 429 A.2d 871 (1980); *Chrysler Credit Corp.* v. *Fairfield Chrysler-Plymouth, Inc.*, 180 Conn. 223, 228, 429 A.2d 478 (1980).

Nevertheless, we allowed an appeal from a discovery order in *Lougee* v. *Grinnell*, 216 Conn. 483, 487, 582 A.2d 456 (1990). In *Lougee*, we distinguished our holding from *Melia* and concluded that the trial court's denial of the nonparty witness' motion to quash a subpoena to appear at a deposition in Connecticut regarding a lawsuit in Texas satisfied *Curcio's* first prong and, therefore, constituted a final judgment that merited an immediate appeal. Id. Unlike *Melia* and the present case, in *Lougee* the outcome of the Connecticut proceeding could not result in a later judgment from which the petitioner could then appeal, because "the sole judicial proceeding instituted in Connecticut concerned the propriety of [the] deposition subpoena . . . ." Id. Accordingly, we find that, unlike *Lougee*, this appeal does not fall within *Curcio*'s test.

Thus, it must now be determined whether this appeal should be allowed pursuant to § 52-265a. Although the plaintiff's § 52-265a application was denied originally, it was denied without prejudice.[13] In *Hall* v. *Gilbert &*

---

[13] The plaintiff's application, filed on September 16, 1998, was an appeal from the trial court's September 2, 1998 reaffirmance of its order requiring disclosure. Thus, the application was filed within the two week time limit set by § 52-265a.

*Bennett Mfg. Co.*, supra, 241 Conn. 282, the chief justice varied from the usual § 52-265a certification procedure and treated the appellant's General Statutes § 31-301b appeal as a late petition pursuant to § 52-265a because of the particular circumstances of the case. Similarly, in the present case, the merits of the plaintiff's original § 52-265a application must now be considered. In doing so, it must be determined whether the issues raised by the discovery order "[involve] a matter of substantial public interest and in which delay may work a substantial injustice . . . ." General Statutes § 52-265a (a). We conclude that these prerequisites have been met and accordingly this appeal is authorized pursuant to § 52-265a.

This determination is based upon the following. The disclosure ordered by the trial court directly involves the attorney-client privilege, the importance of which we have recently reaffirmed. *Shew* v. *Freedom of Information Commission*, 245 Conn. 149, 162–63, 714 A.2d 664 (1998) (attorney-client privilege invoked when confidential communication between client and attorney is inextricably linked to giving of legal advice). Connecticut has a long-standing, strong public policy of protecting attorney-client communications. See, e.g., *Doyle* v. *Reeves*, 112 Conn. 521, 523, 152 A. 882 (1931) (quoting common-law rule embodied in 5 J. Wigmore, Evidence [2d Ed. 1923] § 2292). This privilege was designed, in large part, to encourage full disclosure by a client to his or her attorney so as to facilitate effective legal representation. *State* v. *Cascone*, 195 Conn. 183, 188, 487 A.2d 186 (1985). It is important not to weaken the privilege with various exceptions because, as the United States Supreme Court has explained, even the threat of disclosure would have a detrimental effect on attorneys' ability to advocate for their clients while preserving their ethical duty of confidentiality. *Hickman* v. *Taylor*,

329 U.S. 495, 511, 67 S. Ct. 385, 91 L. Ed. 451 (1947) (where threat of disclosure, "[i]nefficiency, unfairness, and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial . . . [causing] the interests of the clients and the cause of justice [to] be poorly served").

In order to understand the significance of this appeal, one must also place it within the context of the thousands of ongoing asbestos tort actions that have been commenced in at least thirty other jurisdictions throughout the country. If the appeal were dismissed and the relevant documents were disclosed in the present case, the claimants in asbestos tort actions brought in foreign jurisdictions would be likely to seek discovery orders forcing the plaintiff to disclose the documents it had disclosed to the defendants in the present coverage dispute. The court's protective order over the privileged documents governs only cases within Connecticut. Consequently, it is possible that a foreign court could indeed require the plaintiff to disclose the documents, based on their disclosure in the present case. See *Baker* v. *General Motors Corp.*, 522 U.S. 222, 118 S. Ct. 657, 139 L. Ed. 2d 580 (1998) (full faith and credit given to Michigan decision did not bar testimony in Missouri, even though Michigan court enjoined such testimony). Although the plaintiff could try to invoke the attorney-client privilege in ongoing or future asbestos tort actions, that defense would, at the very least, be undermined as a result of the disclosure of the documents to its adversaries in the present case, despite the fact that it was disclosed pursuant to a protective order. Thus, before the propriety of the discovery order in the present case could be the subject of an appeal, these privileged documents detailing, among other things, the plaintiff's legal strategy regarding the asbestos tort

actions could be ordered to be disclosed in cases pending in other jurisdictions.

Furthermore, the plaintiff would be prejudiced regarding its handling of ongoing and future asbestos tort actions because it would be forced to communicate with its attorneys in that context knowing that their communications might not be kept confidential if later requested by the defendants. Disclosure would also prejudice the plaintiff in the present case because the documents include opinions and mental impressions of the plaintiff's attorneys regarding issues that are being litigated in both the present case and the asbestos tort actions.[14]

The plaintiff further maintains that by allowing this appeal and establishing rules for trial courts to follow in insurance coverage disputes, this court will serve a substantial public interest. We agree. There is a division among the trial courts with respect to that type of disclosure in an insurance coverage case,[15] hence our decision will both resolve this conflict and preserve the attorney-client privilege.

Accordingly, we conclude that the plaintiff's appeal concerns a matter of substantial public interest in which

---

[14] For example, the defendants claim that because the plaintiff failed to disclose information regarding the hazards of asbestos, the underlying harm in the asbestos tort actions was not unexpected or unintended. Such a claim may provide the defendants with a defense to coverage.

[15] See, e.g., *Remington Arms Co.* v. *Liberty Mutual Ins. Co.*, 142 F.R.D. 408, 418 (D. Del. 1992) (denying disclosure, according Connecticut law); *Chenkus* v. *Dickson*, Superior Court, judicial district of New Haven, Docket No. 282007 (September 7, 1990) (2 Conn. L. Rptr. 260, 261) (denying disclosure); contra *Communication Satellite Corp.* v. *Aetna Casualty & Ins. Co.*, Docket No. 3:93CV1465 (D. Conn. April 6, 1995) (granting disclosure based on insured's duty to cooperate and its duty of good faith, according to Connecticut and District of Columbia law); *EDO Corp.* v. *Newark Ins. Co.*, 145 F.R.D. 18, 21 (D. Conn. 1992) (granting disclosure based on insured's duty to cooperate, according to Connecticut law); *Carrier Corp.* v. *Home Ins. Co.*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 353283 (June 12, 1992) (7 C.S.C.R. 823) (granting disclosure based on cooperation clause, not "at issue" exception).

delay may work an injustice. See *Hall* v. *Gilbert & Bennett Mfg. Co.*, supra, 241 Conn. 301. We, therefore, allow this appeal, pursuant to § 52-265a. Furthermore, all temporal deadlines in § 52-265a are waived. See id. Finally, in view of the record and the briefs filed in the present § 52-263 appeal, they will also constitute the record and the briefs for the § 52-265a appeal. Therefore, it will not be necessary for the trial court to comply with § 52-265a (c).[16]

## II

We next reach the substantive issue of whether the trial court properly ordered the disclosure of the documents. With respect to the appropriate standard of review, Practice Book § 13-14 (a) provides in relevant part that a trial court "may, on motion [to compel production], make such order as the ends of justice require." Consequently, "the granting or denial of a discovery request rests in the sound discretion of the court"; *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 57, 459 A.2d 503 (1983); and can be reversed only if such an order constitutes an abuse of that discretion. The ultimate issue in our review is, therefore, whether the trial court reasonably could have concluded as it did. *Simmons* v. *Simmons*, 244 Conn. 158, 175, 708 A.2d 949 (1998).

## A

In order to determine whether the trial court properly ordered disclosure, we must for the first time set forth the contours of the "at issue" exception to the attorney-client privilege in Connecticut. We then must decide whether the trial court properly determined that the at issue exception to the attorney-client privilege applies to the present case.[17] The plaintiff claims that it did not

---

[16] See footnote 6 of this opinion for text of § 52-265a (c).

[17] The plaintiff also alleges that some of these documents are protected by the work product doctrine, a matter we decline to reach. Typically, the attorney work product doctrine encompasses work that is essentially the result of an attorney's activities when those activities have been conducted

put the relevant documents at issue so as to mandate their production pursuant to the at issue exception to the attorney-client privilege. We agree.

In Connecticut, the attorney-client privilege protects both the confidential giving of professional advice by an attorney acting in the capacity of a legal advisor to those who can act on it, as well as the giving of information to the lawyer to enable counsel to give sound and informed advice. *Shew* v. *Freedom of Information Commission*, supra, 245 Conn. 157, citing *Upjohn Co.* v. *United States*, 449 U.S. 383, 390, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981). It is undisputed that the privilege was created "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observation of law and administration of justice." *Upjohn Co.* v. *United States*, supra, 389. Exceptions to the attorney-client privilege should be made only when the reason for disclosure outweighs the potential chilling of essential communications. "It is obvious that professional assistance would be of little or no avail to the client, unless his legal adviser were put in possession of all the facts relating to the subject matter of inquiry or litigation, which, in the indulgence of the fullest confidence, the client could communicate. And it is equally obvious that there would be an end to all confidence between the client and [the] attorney, if the latter was at liberty or compellable to disclose the facts of which he had thus obtained possession . . . ." *Goddard* v. *Gardner*, 28 Conn. 172, 174 (1859).

Because of the important public policy considerations that necessitated the creation of the attorney-client privilege, the "at issue," or implied waiver, exception is invoked only when the contents of the legal

with a view toward litigation. *Stanley Works* v. *New Britain Redevelopment Agency*, 155 Conn. 86, 95, 230 A.2d 9 (1967); see also *Hickman* v. *Taylor*, supra, 329 U.S. 511.

advice is integral to the outcome of the legal claims of the action.[18] *Remington Arms Co. v. Liberty Mutual Ins. Co.*, 142 F.R.D. 408, 412–15 (D. Del. 1992) (applying Connecticut law). Such is the case when a party specifically pleads reliance on an attorney's advice as an element of a claim or defense, voluntarily testifies regarding portions of the attorney-client communication, or specifically places at issue, in some other manner, the attorney-client relationship.[19] In those instances the party has waived the right to confidentiality by placing the content of the attorney's advice directly at issue because the issue cannot be determined without an examination of that advice. "If the information is actually required for a truthful resolution of the issue on which the party has raised . . . the party must either waive the attorney-client privilege as to that information or it should be prevented from using the privileged information to establish the elements of the case." *Remington Arms Co. v. Liberty Mutual Ins. Co.*, supra, 415; see also *State v. Hydrite Chemical Co.*, 220 Wis. 2d 51, 71, 582 N.W.2d 411 (App.), cert. denied, 220 Wis. 2d 364, 585 N.W.2d 156 (1998) (adopting three part at issue test set forth in *Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66, 71 [D.N.J. 1992], which requires [1] demonstration of legitimate need for privileged documents, [2] showing of relevance and materiality, and [3] proof

---

[18] Liberal waiver rules have been criticized on the grounds that they supposedly "increase litigation costs and judicial time spent on discovery disputes, favor the wealthiest litigants, undermine the values served by the privilege rules, and vary according to the identity of the litigants and their purported need for privileged information." *Remington Arms Co. v. Liberty Mutual Ins. Co.*, 142 F.R.D. 408, 413 (D. Del. 1992).

[19] *Sedco International, S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir.), cert. denied, 459 U.S. 1017, 103 S. Ct. 379, 74 L. Ed. 2d 512 (1982); see, e.g., *Byers v. Burleson*, 100 F.R.D. 436, 440 (D.D.C. 1983) (legal advice at issue in legal malpractice action); *Handgards, Inc. v. Johnson & Johnson, Inc.*, 413 F. Sup. 926, 929 (N.D. Cal. 1976) (legal advice at issue when special defense of good faith in reliance on advice of counsel is argued); *Kantaris v. Kantaris*, 169 N.W.2d 824, 830 (Iowa 1969) (testimony concerning attorney-client communication waived privilege).

by party seeking documents that information contained within cannot be secured elsewhere).

Merely because the communications are relevant does not place them at issue. *Remington Arms Co.* v. *Liberty Mutual Ins. Co.*, supra, 142 F.R.D. 415 (finding no waiver regarding documents that relate to underlying actions and are protected by attorney-client privilege, because merely relevant in coverage action); see *Rockwell International Corp.* v. *Superior Court*, 26 Cal. App. 4th 1255, 1268, 32 Cal. Rptr. 2d 153 (1994) (finding at issue doctrine not invoked because coverage action turns on underlying facts, not insured's reliance on advice of counsel as defense). If admitting that one relied on legal advice in making a legal decision put the communications relating to the advice at issue, such advice would be at issue whenever the legal decision was litigated. If that were true, the at issue doctrine would severely erode the attorney-client privilege and undermine the public policy considerations upon which it is based.

In the present case, the plaintiff has not pleaded reliance on any information or advice contained in the privileged documents. Although the plaintiff's compliance with the requirement in its policy to make reasonable settlements is at issue, that fact does not place the privileged documents at issue. Compliance with contract terms is generally an element in all contractual actions, yet reliance upon legal advice within the process of adhering to contract terms does not automatically place the actual legal advice at issue. See *Rockwell International Corp.* v. *Superior Court*, supra, 26 Cal. App. 4th 1268. Therefore, even though certain of the plaintiff's senior officials may have stated in depositions that advice of counsel was a significant motivating factor in the officials' decisions to settle the asbestos tort actions, the privileged documents are not at issue because the plaintiff is not relying on the privileged

communications to prove that those settlements were reasonable.[20]

Where, as in the present case, an insured alleges that an insurer improperly has failed to defend and provide coverage for underlying claims that the insured has settled the insured has the burden of proving that the claims were within the policy's coverage *and* that the settlements were reasonable. *Black* v. *Goodwin, Loomis & Britton, Inc.*, 239 Conn. 144, 160, 681 A.2d 293 (1996), citing *Alderman* v. *Hanover Ins. Group*, 169 Conn. 603, 611, 363 A.2d 1102 (1975) (in order to be covered by insurer, settlement made by insured must have been reasonable and made in good faith). The reasonableness of the settlement, in turn, should be examined under an objective standard.[21] Reasonableness is determined according to factors such as, but

---

[20] See, e.g., *North River Ins. Co.* v. *Philadelphia Reinsurance Corp.*, 797 F. Sup. 363, 370 (D.N.J. 1992) (finding no exception to attorney-client privilege regarding underlying action in subsequent insurance coverage dispute); *Rockwell International Corp.* v. *Superior Court*, supra, 26 Cal. App. 4th 1268 (finding at issue doctrine not invoked in subsequent insurance coverage dispute, therefore, advice of counsel in underlying action was privileged); *Home Ins. Co.* v. *Advance Machine Co.*, 443 So. 2d 165, 168 (Fla. App. 1983) (insurance companies did not place privileged materials at issue by filing action that required proof that settlement was reasonable); see generally *Medtronic, Inc.* v. *Intermedics, Inc.*, 162 F.R.D. 133, 134–35 (D. Minn. 1995) (where interpretation and understanding of contract is based on contract itself, no extrinsic evidence needed); contra *Waste Management, Inc.* v. *International Surplus Lines Ins. Co.*, 144 Ill. 2d 178, 191, 579 N.E.2d 322 (1991) (finding defense counsel's litigation files in underlying cases were at issue in insurance coverage dispute).

[21] See, e.g., *Luria Bros. & Co.* v. *Alliance Assurance Co., Ltd.*, 780 F.2d 1082, 1091 (2d Cir. 1986) (examined objective facts known to plaintiff at time of settlement in order to determine its reasonableness); *Black* v. *Goodwin, Loomis & Britton, Inc.*, supra, 239 Conn. 160–61 (examined objective facts known to plaintiff at time of settlement and expert testimony to determine reasonableness of settlement); *United Services Automobile Assn.* v. *Morris*, 154 Ariz. 113, 121, 741 P.2d 246 (1987) ("test as to whether the settlement was reasonable and prudent is what a reasonably prudent person in the insureds' position would have settled for on the *merits* of the claimant's case" [emphasis in original]); *Alton M. Johnson Co.* v. *M.A.I. Co.*, 463 N.W.2d 277, 279 (Minn. 1990) (setting forth objective test to determine whether

not limited to, "whether there is a significant prospect of an adverse judgment, whether settlement is generally advisable, [whether] the action is taken in good faith, and [whether it is] not excessive in amount . . . ." J. Stempel, Law of Insurance Contract Disputes (2d Ed. 1999) § 9.02[b], pp. 9-50 through 9-51.

It would be quite different if the plaintiff sought to prove reasonableness based upon the advice of counsel. In that instance, counsel's advice would be at issue—but that is not the situation in the present case. Accordingly, although the reasonableness of the settlements is directly at issue, the exact communications between the plaintiff and its attorneys regarding the decision to settle, which would aid only in a subjective determination, are not at issue. In sum, the defendants in the present case can assess whether the settlements of the asbestos tort actions were reasonable by examining the facts of the asbestos tort actions—the same material that the plaintiff had available to it when making its decision—and by consulting experts, just as the plaintiff had the opportunity to do.

The trial court in the present case seems to have misconstrued the at issue exception by focusing on the defendants' need for the documents.[22] When privileged communications are not at issue, the opposing party cannot destroy the attorney-client privilege by merely

settlement is reasonable in insurance coverage dispute); see also 7C J. Appleman, Insurance Law and Practice (1979) § 4690, pp. 229–33; J. Stempel, Law of Insurance Contract Disputes (2d Ed. 1999) § 9.02[b], pp. 9-50 through 9-51.

[22] Although Practice Book § 13-3 provides that certain documents prepared for litigation are discoverable if the moving party shows a substantial need, § 13-3, like its federal counterpart, rule 26 (b) (3) of the Federal Rules of Civil Procedure, encompasses only documents covered by the work product doctrine, not ones protected by the attorney-client privilege. See *Upjohn Co.* v. *United States*, supra, 449 U.S. 401. As stated in footnote 17 of this opinion, we do not reach the issue of protection pursuant to the work product doctrine.

claiming a need for the documents.[23] It would be "inconsistent with the nature and purpose of the [attorney-client] privilege" to make an exception to the privilege based only on the unavailability of information from other sources. *Admiral Ins. Co.* v. *United States District Court for the District of Arizona*, 881 F.2d 1486, 1494 and n.7 (9th Cir. 1989).

Our understanding of the at issue doctrine is also supported by the fact that disclosure in the present case would have the undesirable effect of weakening significantly that privilege. Not only would compelling disclosure of the privileged documents risk disclosure in foreign jurisdictions, it would probably chill communications between policyholders and counsel for the asbestos tort actions out of fear of disclosure in future coverage litigation. It could also chill attorney-client communications on a wider scale because disclosure would call into question whether this court might find other exceptions to the privilege in different contexts. "The effect [of weakening the protection] on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served." *Hickman* v. *Taylor*, supra, 329 U.S. 511.

## B

We also must determine whether the trial court properly ordered the disclosure based on the cooperation clauses in the policies between the plaintiff and the defendants. We hold that the cooperation clauses do not justify disclosure.

The trial court decision, without any analysis except a statement that it was relying on *Carrier Corp.* v. *Home*

---

[23] See *Admiral Ins. Co.* v. *United States District Court for the District of Arizona*, 881 F.2d 1486, 1494 (9th Cir. 1989) (declining to make unavailability exception to attorney-client privilege); *State ex rel. United States Fidelity & Guaranty Co.* v. *Montana Second Judicial District Court*, 240 Mont. 5, 12, 783 P.2d 911 (1989) (adopting rule in *Admiral Ins. Co.*).

*Ins. Co.*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 353283 (June 12, 1992) (7 C.S.C.R. 823),[24] determined that the cooperation clauses in the insurance contracts merited disclosure in the present case.[25] The language of the cooperation clauses, however, does not support such a conclusion.

An example of the language typical of the cooperation clauses in the present case is as follows: "Assistance and Co-operation. The [Insurance] Company shall not be called upon to assume charge of the settlement or defense of any claim made or suit brought or proceeding instituted against the Insured but the Company shall have the right and shall be given the opportunity *to associate with the Insured or the Insured's underlying insurers, or both, in the defense and control of any claim, suit or proceeding . . . where the claim or suit involves or appears reasonably likely to involve the Company, in which event the Insured and the Company shall co-operate in all things in the defense of such claim, suit or proceeding.*" (Emphasis added.) Home Ins. Co. Policy No. HEC 1 19 99 93. The cooperation clauses, according to the terms of the policies, are invoked only when the insurer exercises its right "to associate with the insured . . . in the defense and control [a] claim . . . ." Id. Therefore, at most, disclosure pursuant to the cooperation clauses possibly could be required only if and when the insurance company participates "in the defense" of underlying cases.[26] In the

---

[24] The trial court in *Carrier Corp.* v. *Home Ins. Co.*, supra, 7 C.S.C.R. 827, held that the existence of the cooperation clause made it unreasonable for the insured to expect confidentiality in its attorney-client communications and work product documents, and, consequently, that no privilege existed as to the insurer.

[25] We note that if the documents were never privileged because of the cooperation clauses in the relevant insurance policies, the at issue exception to the attorney-client privilege would have no privilege from which to create an exception.

[26] If, however, the defendants had retained counsel for and in defense of the plaintiff in the asbestos tort actions, the defendants' argument still would run counter to our well settled law. As we point out in part II C of this

present case, the cooperation clauses cannot justify disclosure because the defendants have failed to fulfill this predicate.

Furthermore, the defendant insurers not only have failed to associate with the plaintiff in the defense of the asbestos tort actions, they have denied coverage or reserved their rights. "[E]ither the policy provides coverage, in which case the denial of coverage breaches the insurance contract and relieves [the policyholder] of the duty to cooperate, or there is no duty to cooperate because the damage is not [within the scope of the policy]."[27] (Internal quotation marks omitted.) *Remington Arms Co.* v. *Liberty Mutual Ins. Co.*, supra, 142 F.R.D. 417 (applying Connecticut law). A leading treatise that supports such a reading explains that " 'upon the insurer's anticipatory breach of its duty to indemnify the insured, the insured is freed from its obligations under the cooperation clause to the extent necessary to reasonably protect itself against the breach.' " Id., quoting 8 J. Appleman & J. Appleman, Insurance Law and Practice (Sup. 1991) § 4786.

The defendants, however, maintain that the privilege never attached to the documents because, at the time

opinion, even when an insurer retains an attorney for the defense of claims against an insured, the attorney's allegiance is to his or her client, the insured, not to the insurer. *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 573, 316 A.2d 394 (1972).

[27] See also *Bituminous Casualty Corp.* v. *Tonka Corp.*, 140 F.R.D. 381, 386 (D. Minn. 1992) (rejecting theory that cooperation clause negates any expectation of confidentiality by insured as "fundamentally unsound"); *North River Ins. Co.* v. *Philadelphia Reinsurance Corp.*, 797 F. Sup. 363, 369 (D.N.J. 1992) (cooperation clause does not prevent insured's expectation of confidentiality); *Rockwell International Corp.* v. *Superior Court*, supra, 26 Cal. App. 4th 1260 (rejecting theory that cooperation clause negates any expectation of confidentiality by insured as "fanciful"); *State* v. *Hydrite Chemical Co.*, supra, 220 Wis. 2d 75 (cooperation clause does not supersede attorney-client privilege); contra *Waste Management, Inc.* v. *International Surplus Lines Ins. Co.*, 144 Ill. 2d 178, 192–93, 579 N.E.2d 322 (1991) (cooperation clause negates any expectation of confidentiality by insured).

of their making, the plaintiff could not have had a reasonable expectation of confidentiality due to its contractual obligation to assist the defendants in defending such claims and an implicit duty of good faith and fair dealing. Once again, the language of the clauses refutes such a contractual reading. The plaintiff reasonably could have expected confidentiality at least until the defendants agreed to "associate . . . in the defense and control" of the claim.[28] The defendants have never participated in the defense of those claims even though they could have determined coverage based on their assessment of the facts of the asbestos tort actions. It is just this type of maneuvering—refusing to defend an underlying claim, then second-guessing its settlement in an effort to deny coverage—that the disclosure of the relevant documents would encourage and that the amici curiae[29] argue against. Finally, we have heard no persuasive argument that the implicit duty of good faith and fair dealing within each insurance contract should be so expansive as to encompass the disclosure of otherwise privileged documents.

## C

We now consider whether the two alternative grounds for affirmance offered by the defendants merit disclosure of the relevant documents. We conclude that they do not.

First, the defendants assert that, although the trial court did not rely on the "common interest" exception to the attorney-client privilege in its discovery order, this court can affirm its decision on this ground. We

---

[28] We need not, and therefore decline to, decide whether disclosure of any or all of the relevant documents would be warranted under the cooperation clauses even if the defendants had agreed to cover the claims and had participated in the plaintiff's defense against them.

[29] The following parties have submitted a joint amici curiae brief in the present case: Lone Star Industries, Inc., BIC Corporation, United Technologies Corporation, Otis Elevator Company, Carrier Corporation and Fortune Brands, Inc.

decline to do so. The parties' common interest in the asbestos tort actions, according to the defendants, made it unreasonable for the plaintiff to expect to maintain confidentiality regarding the defendants.[30] We need not elaborate on the contours of the "common interest" doctrine[31] in Connecticut in order to determine conclusively that it does not extend to the circumstances of the present case.

It is true that an insured and an insurer would have a common interest in defeating or minimizing claims against the insured if the insurer were to agree to cover the insured's claims. Yet, as the amici curiae argue in their brief, we have long held that *even* when an insurer retains an attorney in order to defend a suit against an insured, the attorney's only allegiance is to the client, the insured. *Novella* v. *Hartford Accident & Indemnity Co.*, 163 Conn. 552, 573, 316 A.2d 394 (1972); see also *Higgins* v. *Karp*, 239 Conn. 802, 810, 687 A.2d 539 (1997) ("even when an attorney is compensated or expects to be compensated by a liability insurer, [his or] her duty of loyalty and representation nonetheless remains exclusively with the insured"), after remand, 243 Conn. 495, 706 A.2d 1 (1998). Such a rule recognizes that the insured's and the insurer's interests are not all common. See R. Jerry, Understanding Insurance Law (2d Ed. 1996) § 114, pp. 779–819 (extensive discussion of conflicts of interest between insureds and insurers). Furthermore, in a case such as the present one, where the

---

[30] The defendants are unclear whether this argument entails a common interest exception to the attorney-client privilege or a situation that prevents the creation of the formation of the attorney-client privilege, as they allege regarding the "cooperation clauses." Because we find that both "common interest" theories are unsound, we decline to speculate on this distinction.

[31] "The common interest doctrine subsumes a number of principles that are sometimes characterized as separate rules and at other times conflated into a single axiom." *North River Ins. Co.* v. *Columbia Casualty Co.*, No. 90 CIV 2518, 1995 U.S. Dist. LEXIS 53, at *4 (S.D.N.Y. January 5, 1995); see id. (common interest doctrine considered related to or even identical to "common defense rule," "community of interest rule" and "joint defense privilege").

insured retained its own attorneys and acted independently of its insurers in settling the underlying cases, the insured and the insurer have even less commonality of interests. In either scenario, they do not share common interests in the characterization of the claims or in the settlement of such claims.[32] *Remington Arms Co. v. Liberty Mutual Ins. Co.*, supra, 142 F.R.D. 418.

Moreover, an insured's and an insurer's interests immediately become conflicted as soon as the insurer declines to cover the claims. Thus, many courts have rejected the theory proposed by the defendants.[33] In the present case, where the claims involve allegations of intentional torts that the insurance contracts do not cover and the defendants had not yet agreed to defend the claims, it was reasonable for the plaintiff to have expected confidentiality when handling those claims.

Finally, the defendants' assertion that because the plaintiff gave Travelers access to certain privileged documents that are at issue in the present case,[34] it has waived its privilege vis-a-vis the defendant excess liabil-

[32] For example, the characterization of a tort as intentional or negligent could determine insurance coverage, or the settlement of a claim could have negative implications for the insured, but not for the insurer.

[33] See, e.g., *Remington Arms Co.* v. *Liberty Mutual Ins. Co.*, supra, 142 F.R.D. 418 (common interest doctrine not invoked in insurance coverage case); *Bituminous Casualty Corp.* v. *Tonka Corp.*, 140 F.R.D. 381, 387 (common interest doctrine not applicable when attorney never represented insurer, who sought privileged materials); *North River Ins. Co.* v. *Philadelphia Reinsurance Corp.*, 797 F. Sup. 363, 367 (D.N.J. 1992) (common interest doctrine "completely unlashed from its moorings" where no dual representation); *Rockwell International Corp.* v. *Aetna Casualty & Surety Co.*, supra, 26 Cal. App. 4th 1266 (common interest doctrine inapplicable in insurance coverage case); *State* v. *Hydrite Chemical Co.*, supra, 220 Wis. 2d 76 (rejecting common interest exception to attorney-client privilege); contra *Waste Management, Inc.* v. *International Surplus Lines Ins. Co.*, 144 Ill. 2d 178, 193–95, 579 N.E.2d 322 (1991) (in insurance coverage disputes, common interest doctrine allows discovery of documents otherwise covered by attorney-client privilege).

[34] The defendants claim specifically that the plaintiff revealed documents to Travelers in categories five and six of the logged documents at issue. See footnote 5 of this opinion for a description of those categories.

ity insurers, is without merit. The defendants have offered this theory as a second alternative ground for affirming the trial court's discovery order. The defendants, however, have cited no authority upon which to base such a claim. Moreover, any such disclosures made to Travelers pursuant to defending the asbestos tort actions only waived privileges as to Travelers, who now has an obligation to keep those disclosures confidential.[35]

The order of the trial court is reversed with respect to the discovery order pertaining to the seven document categories more specifically set forth in footnote 5 of this opinion and the case is remanded to the trial court for further proceedings not inconsistent with this opinion.[36]

In this opinion the other justices concurred.

---

[35] We note that the present relationship between the plaintiff and Travelers is the precise situation to which the aforementioned cooperation clauses apply.

[36] We recognize that some of the documents within the seven categories listed in footnote 5 of this opinion, withheld by the plaintiff based upon an assertion of the attorney-client privilege, may be discoverable under theories different than those addressed in this opinion. On remand, the trial court may consider those theories to the extent that they are raised. Likewise, the trial court, to the extent raised by the plaintiff, may consider that certain items in the seven categories are not discoverable because of the work product doctrine or otherwise. See footnote 17 of this opinion.