**FIRST AVIATION SERVICES, INC., National Airmotive Corporation, Aaron P. Hollander and Michael Culver, Plaintiffs,**

v.

**GULF INSURANCE COMPANY, Defendant.**

**No. 3:00cv150 (PCD).**

United States District Court, D. Connecticut.

March 8, 2001.

---

John B. Berringer, Edward J. Stein, William G. Passannante, Anderson, Kill & Olick, New York City, W. James Cousins, McGowan & Cousins, Wilton, CT, for plaintiffs.

Gary Lee Lockwood, Jannis E. Goodnow, Lord Bissell & Brook, Chicago, IL, Charles A. Deluca Ryan, Ryan, Johnson & Deluca, Stamford, CT, Angelo G. Savino, Lord, Bissell & Brook, New York City, for defendant.

*RULING ON MOTIONS TO COMPEL*

DORSEY, Senior District Judge.

Plaintiffs and defendant move to compel production of certain documents. The three pending motions are resolved below.

## I. BACKGROUND

Plaintiffs seek damages pursuant to a Directors & Officers ("D & O") Liability and Company Reimbursement Insurance Policy issued by defendant ("Gulf Policy"). In particular, they seek defense and settlement costs allegedly incurred in a California lawsuit brought by John Risko against plaintiffs and others for alleged breach of contract and bad faith ("Risko Action"). In the Risko Action, Risko alleged that Hollander and Culver falsely promised that Risko would be given a one-third share of First Aviation Services, Inc. ("FAVS") or National Airmotive Corporation ("NAC"). He also alleged he was wrongfully terminated from his employment at FAVS, NAC, and First Equity Development, Inc. ("FED"), a Risko Action defendant not insured under the Gulf Policy.

Plaintiffs in the instant case seek damages in excess of $3 million for the above claims, as well as for alleged violations of the Connecticut Unfair Insurance Practices Act ("CUIPA") and the Connecticut Unfair Trade Practices Act ("CUTPA").

## II. DISCUSSION

### A. *Defendant's Motion to Compel*

Defendant moved for production of 1) documents responsive to Document Requests Nos. 45, 48, and 49; 2) answers responsive to Interrogatories Nos. 7 and 8; and 3) a privilege log. Plaintiffs objected only to production of documents responsive to Request No. 45. Accordingly, defendant withdraws its motion except with respect to Request No. 45 and the privilege log that plaintiffs ultimately produced.

■ Request No. 45 asks for "[a]ll documents concerning the action brought by First Equity Development, Inc. against Risko in Connecticut, referred to in the invoice of Weil, Gotshal & Manges dated May 4, 1998." Defendant claims that the Connecticut action focused in part on an employment dispute between Risko and some of the parties from the Risko action. Defendant argues that "the relatedness of the two actions is demonstrated by the fact that documents from the Connecticut Action were expressly designated as confidential pursuant to the Protective Order entered by the California Court in the Risko Action, indicating an unmistakable overlap in the evidence relevant to both of those actions." Def.'s Mem. in Supp., at 4.

Plaintiffs respond that, to the extent any invoice inadvertently included any expense related to the Connecticut action, they do not expect Gulf to pay that expense. Plaintiffs argue that there is nothing relevant or reasonably calculated to lead to discovery of admissible evidence in the Connecticut action documents. Further, plaintiffs dispute defendant's characterization of the Connecticut action as an employment dispute—the action dealt with allegations by FED that Risko engaged in misconduct after termination of his employment. Specifically, FED alleged that Risko breached the terms of a restrictive covenant in his employment agreement with FED, violated CUTPA and the Connecticut Trade Secrets Act, and breached his fiduciary duties as a former officer and director of FED.

Defendant's argument that the documents from the Connecticut action are relevant to the instant action is tenuous at best. Defendant does not explain how the chain of events *after* Risko's termination, i.e., the facts underlying the Connecticut Action, could have any relevance to the Risko action. Rather, defendant rests its argument on the fact that a protective order governed documents from both cases. If documents from the Connecticut Action were admitted as evidence in the Risko action, defendant is certainly entitled to these documents. However, a request for *all* the documents from a lawsuit that does not appear to have any bearing on the instant lawsuit is beyond the scope of discovery. Defendant's motion to compel production of all Connecticut Action documents is denied.

■ Defendant also seeks a more detailed privilege log from plaintiffs. Defendant contends that the log's first four entries set forth "categorical claims" of privilege that do not specify or identify the specific documents withheld by plaintiffs. Defendant claims it cannot determine from the log the number of documents withheld, whether any attorney was party to the communications, who au-

thored the documents, when they were authored, or whether copies were sent to any third-parties.

Local Rule 9(d)(1) requires a privilege log to contain 1) the type of document, 2) the general subject matter of the document, 3) the date of the document, 4) the author of the document, and 5) each recipient of the document. Accordingly, except where the information required by the above categories is itself privileged, plaintiffs shall provide a more detailed log in compliance with the Local Rule.

Defendant's motion to compel is **granted in part and denied in part.**

### B. Plaintiffs' Motion to Compel Production of Claims Documents

Plaintiffs move to compel Gulf to produce all claims documents of its outside claims handlers, Lord, Bissell & Brook ("LBB"), and all claims and underwriting manuals and interpretive documents. Defendant objects, claiming the LBB documents are privileged and no manuals or interpretive documents exist.

Plaintiffs assert that Gulf retained LBB to investigate and make a coverage determination regarding their D & O claim. They contend that such a task is normally performed by an insurance company's claim department, and thus the claims-handling documents are not protected by the attorney-client or work-product privileges. Defendant responds that LBB served as its legal advisor and, thus, their communications are entitled to attorney-client privilege. Further, defendant claims that it anticipated an adversarial coverage dispute from the early stages of the matter and is therefore entitled to the protection of the work-product doctrine.

■ In a diversity action, the issue of privilege is governed by the substantive law of the forum state. *Dixon v. 80 Pine Street Corp.*, 516 F.2d 1278, 1280 (2d Cir.1975). As neither party has argued to the contrary, Connecticut law will govern. Discovery procedure will be governed by federal law. *Id.*

■ The attorney-client privilege in Connecticut "protects both the confidential giving of professional advice by an attorney acting in the capacity of a legal advisor to those who can act on it, as well as the giving of information to the lawyer to enable counsel to give sound and informed advice." *Metropolitan Life Ins. Co. v. Aetna Casualty & Surety Co.*, 249 Conn. 36, 52, 730 A.2d 51, 60 (1999). "Not every communication between attorney and client falls within the privilege. A communication from attorney to client solely regarding a matter of fact would not ordinarily be privileged, unless it were shown to be inextricably linked to the giving of legal advice." *Ullmann v. State*, 230 Conn. 698, 713, 647 A.2d 324, 332 (1994). A request by a client to his attorney to obtain factual information does not come within the scope of privileged communication. *See Turner's Appeal*, 72 Conn. 305, 318, 44 A. 310, 315 (1899); *see also Reichhold Chemicals, Inc. v. Hartford Accident & Indemnity Co.*, No. CV 880160018S, 2000 WL 1227306 (Conn.Super. Aug. 15, 2000):

> The attorney/client privilege recognized at common law is not, in fact, a general protection of all transactions that involve an attorney and a client, nor can all of the facts a party knows be immunized from discovery merely by telling them to a lawyer. Rather, what is privileged is the communications between client and attorney when made in confidence for the purpose of seeking or giving legal advice. A request that an attorney obtain information from outside sources is not privileged.

*Id.* at *3 (Conn.Super. Aug. 15, 2000) (citations omitted).

Fed.R.Civ.P. 26(b)(3) provides that parties may obtain discovery of documents prepared in anticipation of litigation "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." If such a showing is made and discovery is permitted, "the court shall protect against disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

In the instant case, defendant's expert witness Allan Windt testified at deposition that LBB attorney Gary Lockwood functioned as a claims handler, and the decisions he made were primarily business decisions:

> Whoever is handling the claim on behalf of the insurance company has the same duties and obligations, whether it's a lawyer or not a lawyer. And the duties and obligations are to, of that person, are to figure out what the insurance company's duties or obligations are. In terms of is there coverage, do the right thing with the insured in terms of timely communications and other things that should be done with regard to the insured.
>
> . . . .
>
> Then it's a business decision that whoever is working for the insurance company would still have to make that same business decision. Does it make sense to deny coverage and take our chances in court that our denial will be sustained, even though that's an expensive proposition going through the court process or is the better business decision just to pay?

Windt Dep., at 161–62, Pl.'s Second Supp. Reply, at 3 (quoting Windt).

■ Plaintiffs assert that the documents produced by defendant "are devoid of any evidence of any investigation or claims handling by Gulf." Pl.'s Mem. in Supp., at 4. Gulf does not dispute that it farmed out plaintiffs' case to LBB. Moreover, that Gulf has no claims manuals or underwriting manuals for D & O Liability Insurance Policies suggests that Gulf might outsource all claims arising thereunder.[1] Such a practice cannot become a mechanism for avoiding disclosure of documents through an assertion of privilege. The testimony of Gulf's own expert witness indicates that LBB was acting in a capacity other than merely a legal one. An insurance company "may not insulate itself from discovery by hiring an attorney to conduct ordinary claims investigations." *Arkwright Mutual Ins. Co. v. National Union Fire Ins. Co. of Pittsburgh*, No. 90 Civ. 7811(AGS), 1994 WL 510043, at *5 (S.D.N.Y. Sept. 16, 1994). "[T]o the extent an attorney acts as a claims adjuster, claims process su-

pervisor, or claims investigation monitor, and not as a legal advisor, the attorney-client privilege does not apply." *Amerisure Ins. Co. v. Laserage Tech. Corp.*, No. 96–CV–6313, 1998 WL 310750, at *1 (W.D.N.Y. Feb. 12, 1998).

■ Defendant, as the party asserting privilege, has the burden of proving the elements thereof. *See Arkwright*, 1994 WL 510043, at *4. It has failed to do so. Accordingly, defendant shall produce the claims documents requested by plaintiffs by April 6, 2001. Defendant may redact any legal analysis contained in these documents.

### C. Plaintiffs' Motion to Compel Production by Non–Party

■ Plaintiffs move to compel production by non-party Marsh & McLennan Companies, Inc. ("Marsh"). Marsh objects, claiming that production would be unduly burdensome as the request would require Marsh to review the files of over 50,000 clients—and the documents sought can be obtained directly from defendant. Plaintiffs dispute that the task presents a burden, but does not dispute that Gulf is in possession of the documents sought from Marsh. Marsh has established that compliance with plaintiffs' subpoena would require considerable work. Plaintiffs have not provided any reason why this burden should be on a non-party rather than defendant. Accordingly, the motion to compel production by Marsh is denied.

### III. CONCLUSION

Defendant's motion to compel (doc. 29) is **granted in part and denied in part**. Plaintiffs' motion to compel production of claims documents (doc. 39) is **granted** as consistent with this ruling. Plaintiffs' motion to compel production by Marsh (doc. 55) is **denied**.

Summary judgment motions shall be filed by May 4, 2001.

SO ORDERED.

---

1. Based on Gulf's representation that it has no claims or underwriting manuals, plaintiffs' motion to compel such documents is denied.