[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO COMPEL TESTIMONY AND DOCUMENTS #132
The plaintiff in this matter is Rosemary Whitaker. The defendants are the law firm of Erdos Maddox and Marthew Maddox and David Erdos, individually. The defendants were the plaintiffs counsel in a medical malpractice action that was nonsuited in March of 1998. The plaintiff commenced a legal malpractice action against the defendants on February 17, 2000.
Presently before the court is the defendant's motion to compel CT Page 5856 testimony and documents. The defendants move to compel the testimony of the plaintiff Rosemary Whitaker as well as the production of documents requested in conjunction with the Notice of Deposition dated March 6, 2002. Specifically, the defendants wish to ask the plaintiff questions concerning her decision not to attempt to reopen the medical malpractice action.
The defendants argue that one of the plaintiffs bases of her negligence claim is that the defendants failed to "timely restore the case". The defendants assert that their defense to this claim will be the testimony of the defendant, Matthew Maddox, that he never received the notice of nonsuit dated March 9, 1998, which is highly relevant to the defendants' defense because the four month period within which to reopen an action does not begin to run until the party has notice of the dismissal. Further, the defendants contend that there existed a probability that the medical malpractice action could have been recommenced pursuant to the accidental failure of suit statute, General Statutes § 52-592. These defenses, the defendants assert, place the element of causation at issue. Thus, if it is proven that the defendants' alleged negligence did not prevent recovery by the plaintiff, it cannot be said that the defendants caused the plaintiff to suffer damages. The defendants argue that the plaintiff did not attempt to reopen her medical malpractice action after terminating her relationship with the defendants.
Accordingly, the defendants argue that the plaintiffs decision not to attempt to reopen the medical malpractice action and her reasons and considerations leading up to that decision are at issue and therefore, discoverable and not barred by the attorney-client privilege and/or the word product doctrine.
This court disagrees.
"As a general rule, communications between a client and attorney are privileged when made in confidence for the purpose of seeking legal advice. . . . On numerous occasions [the Connecticut Supreme Court has] reaffirmed the importance of the attorney-client privilege and [has] recognized the long-standing, strong public policy of protecting attorney-client communications. . . . In Connecticut, the attorney-client privilege protects both the confidential giving of professional advice by an attorney acting in the capacity of a legal advisor to those who can act upon it, as well as the giving of information to the lawyer to enable counsel to give sound and informed advice. . . . The privilege fosters full and frank communications between attorneys and their clients and thereby promote[s] the broader public interests in the observation of law and [the] administration of justice." (Citations omitted; internal quotation marks omitted.) Olson v. Accessory Controls Equipment Corp., CT Page 5857254 Conn. 145, 156-57, 727 A.2d 14 (2000).
The attorney work product doctrine in Connecticut is set forth in Practice Book § 13-3. Practice Book § 13-3 provides, in pertinent part that, "a party may obtain discovery of documents and tangible things otherwise discoverable . . . and prepared in anticipation of litigation or for trial by or for another party . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means." "The work product rule protects an attorney's interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible items. . . . Work product can be defined as the result of an attorney's activities when those activities have been conducted with a view to pending or anticipated litigation." (Citations omitted; internal quotation marks omitted.) Ullman v. State,230 Conn. 698, 714, 647 A.2d 324 (1994).
The defendants contend that the privilege does not protect communications concerning a matter of fact, such as whether a meeting occurred, what transpired at the meeting, and the subject matter discussed. Citing to Ullman v. State, supra, 230 Conn. 711-712. TheUllman case and the foregoing principle cited is easily distinguishable from this case. The Ullman case dealt with communication between a defendant's attorney and a state's attorney. The client was not involved and the questioning concerned whether the defendant's attorney knew the defendant's phone number. The court ruled, "[n]ot every communication between attorney and client falls within the privilege. A communication from attorney to client solely regarding a matter of fact would not ordinarily be privileged, unless it were shown to be inextricably linked to the giving of legal advice." Id., 713.
In this case, where the defendants have asserted a special defense of comparative negligence, the defendants want to know the plaintiffs reasons for not attempting to reopen or recommence suit with her new counsel. That decision involves legal advice, strategy, and preparation in anticipation for trial. Any discussions between the plaintiff and her present attorney concerning how to proceed fall under the protection of the attorney-client privilege.
The defendants argue that a waiver of the privilege should be found in this case, apparently relying on the premise that disclosure of information sought is necessarily linked to a full determination of the professional negligence claim advanced by the plaintiff. The court disagrees. CT Page 5858
"Exceptions to the attorney-client privilege should be made only when the reason for disclosure outweighs the potential chilling of essential communications. It is obvious that professional assistance would be of little or no avail to the client, unless his legal adviser were put in possession of all the facts relating to the subject matter of inquiry or litigation, which, in the indulgence of the fullest confidence, the client could communicate. And it is equally obvious that there would be an end to all confidence between the client and [the] attorney, if the latter was at liberty or compellable to disclose the facts of which he had thus obtained possession." (Citation omitted; internal quotation marks omitted.) Metropolitan Life Insurance Co. v. Aetna Casualty,249 Conn. 36, 52, 730 A.2d 51 (1999).
"Because of the important public policy considerations that necessitated the creation of the attorney-client privilege, the `at issue,' or implied waiver, exception is invoked only when the contents of the legal advice is integral to the outcome of the legal claims of the action. . . . Such is the case when a party specifically pleads reliance on an attorney's advice as an element of a claim or defense, voluntarily testifies regarding portions of the attorney-client communication, or specifically places at issue in some other manner, the attorney-client relationship. In those instances the party has waived the right to confidentiality by placing the content of the attorney's advice directly at issue because the issue cannot be determined without an. examination of that advice. If the information is actually required for truthful resolution of the issue on which the party has raised . . . the party must either waive the attorney-client privilege as to that information or it should be prevented from using the privileged information to establish the elements of the case." (Citation omitted; internal quotation marks omitted.) Id., 52-53.
This court finds that the attorney-client privilege has not been waived nor is the information sought inextricably linked to a full determination of the professional negligence claim. The plaintiffs medical malpractice case was nonsuited due to the alleged negligence of the defendants in their failure to take proper care of the plaintiffs' lawsuit. The plaintiffs communications with her new counsel were not placed in issue by her, but by the defendants in their discovery efforts to obtain support for their special defense of comparative negligence. Moreover, the defendants may fully present their evidence concerning whether the plaintiff could have and should have reopened or recommenced the lawsuit without delving into the reasoning of either plaintiff or her counsel underlying the decision not to do so at trial.
For the foregoing reasons, the defendants' motion to compel is denied. The defendants may continue to depose the plaintiff, but the court will CT Page 5859 not compel the plaintiff to testify as to any discussions with her new counsel concerning advice, options, or strategy and this court will not compel the plaintiff to produce the documents the defendants request.
GALLAGHER, J.