# MORTGAGE GUARANTEE & TITLE CO.

### v.

### Fernando S. CUNHA.

### No. 98–598–M.P.

Supreme Court of Rhode Island.

Feb. 11, 2000.

Justin T. Shay, Providence, for Plaintiff.

Lawrence P. McCarthy, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before us on petition for writ of certiorari filed by the plaintiff, Mortgage Guarantee and Title Company, seeking review of an order that granted in part defendant Fernando S. Cunha's motion to compel the production of documents. We granted the petition on March 11, 1999, and ordered the parties to appear and show cause why the issues raised in the petition should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown, and therefore we shall decide the case at this time.

The defendant is an attorney who was authorized to conduct title searches on behalf of plaintiff and to file applications with plaintiff for the issuance of title insurance policies. The defendant's responsibilities included examining all public records affecting title to certain parcels of real estate and thereafter submitting to plaintiff an "Attorney's Certificate for Owner's and/or Mortgagee's Policy and Interim Insurance Binder" (certificate) showing, as exceptions to coverage, any questions or defects to the validity of the title of the owner of the insured property, along with an application for a title insurance policy on the property. Based upon the representations made by defendant in the certificate, plaintiff would prepare and issue a title insurance policy.

On January 23, 1992, defendant submitted an application for a title insurance policy for a certain parcel of real estate in Central Falls (the property). According to plaintiff, the accompanying certificate failed to show defects that existed in the title to the property, including those involving a foreclosure tax lien, an improper entry of judgment, and the recording of an erroneous notice of disposal. Based upon the representations by defendant in the certificate, plaintiff issued a title insurance policy on the property. On February 23, 1993, defendant submitted a second application for title insurance in the amount of $120,000 on the same property. The certificate accompanying this second application allegedly contained the same errors that were contained in the first certificate, and further failed to reflect an attack on the title by First Bank & Trust Company (First Bank) that was made on January 6, 1993. Based upon defendant's representation in the second certificate, plaintiff issued a title insurance policy on February 23, 1993, that was effective retroactive to August 26, 1992, to Robert Ashness and Michael J. Veloso (the insureds), covering

the property and insuring against loss or damage incurred by the insureds as a result of title not being vested in the property owner.[1]

On May 4, 1993, the challenge by First Bank was proved successful, and title to the insured property failed pursuant to an order of the Superior Court that was affirmed by this Court in *Ashness v. Tomasetti*, 643 A.2d 802 (R.I.1994). The insureds then brought suit against plaintiff under the policy for complete failure of title to the property. To determine its duty owed to the insureds under the policy, plaintiff sought the advice and counsel of the law firm of Hanson Curran Parks & Whitman (HCPW). Following negotiations between the parties, plaintiff paid $85,000 to the insureds to settle the claim.

On June 22, 1995, the instant action was filed by plaintiff, alleging negligence and breach of contract on the part of defendant in making the application for the policy that was issued to the insureds. As part of its claim for damages against defendant, plaintiff included the attorneys' fees it had paid to HCPW in connection with the defense of the underlying claim. During discovery, plaintiff produced copies of invoices from HCPW that had been paid by plaintiff. The defendant thereafter sought to compel production of certain documents identified in the invoices from HCPW, including correspondence between plaintiff and HCPW. The plaintiff refused to produce the documents on the ground that they were protected from disclosure by the attorney-client privilege.

At the hearing on defendant's motion to compel production of the documents, a justice of the Superior Court, without conducting an *in camera* review of the documents in question, reasoned that defendant was entitled to view the actual documents in order to determine whether plaintiff's claim for damages was justified. Furthermore, the hearing justice determined that only if the claim for damages relating to attorneys' fees was withdrawn could plaintiff refuse to produce the documents. An order was entered on December 9, 1998, compelling plaintiff to produce the documents or, in the alternative, to withdraw the portion of the damages claim pertaining to attorneys' fees.

■ We granted plaintiff's petition for writ of certiorari on March 11, 1999, and assigned the case to the show cause calendar. Before this Court, plaintiff argued that the hearing justice committed clear error and abused her discretion in ordering plaintiff to produce the correspondence between plaintiff and HCPW. Specifically, plaintiff argued that production of copies of the invoices from HCPW was sufficient to satisfy the claim for attorneys' fees, and that production of the underlying communications would be a violation of the attorney-client privilege. Further, plaintiff argued that the hearing justice erred and abused her discretion when finding that plaintiff had waived the attorney-client privilege by making the claim for attorneys' fees. For the following reasons, we agree with plaintiff's contention that the inclusion of attorneys' fees in the claim for damages does not in itself imply a waiver of the attorney-client privilege.

■ It is well established that "communications made by a client to his attorney for the purpose of seeking professional advice, as well as the responses by the attorney to such inquiries, are privileged communications not subject to disclosure."

---

1. By way of background, Robert Ashness had filed a petition to foreclose a tax lien on the property in November 1991. First Bank, a mortgagee, was named as a defendant in that case. Default judgment was entered against First Bank for failure to answer the petition, and on January 9, 1992, a justice of the Superior Court issued a final decree ordering that all rights of redemption be forever foreclosed and barred. Thereafter, First Bank filed the January 6, 1993, attack for relief from the judgment of the Superior Court pursuant to G.L.1956 § 9–21–2(a)(4), seeking an order vacating the January 1992 judgment foreclosing its right of redemption on the ground that the judgment was void. *See Ashness v. Tomasetti*, 643 A.2d 802 (R.I.1994).

*Callahan v. Nystedt,* 641 A.2d 58, 61 (R.I. 1994) (quoting *State v. von Bulow,* 475 A.2d 995, 1004 (R.I.1984)). As a part of that general rule, attorney-client communications are protected only if the privilege has not been explicitly or implicitly waived by the client. *See Rosati v. Kuzman,* 660 A.2d 263, 265 (R.I.1995) (citing *von Bulow,* 475 A.2d at 1004). In the instant case, defendant argues that by including a claim for attorneys' fees in the claim for damages, plaintiff implicitly waived the privilege as it relates to the communications between plaintiff and HCPW. This Court has not yet addressed the question of whether a demand for attorneys' fees made in connection with a claim for damages amounts to an implicit waiver of the attorney-client privilege. We shall now determine the appropriate rule to apply in such a case.

The principle that the attorney-client privilege is implicitly waived when a party puts an attorney-client communication at issue in a case is well accepted in American jurisprudence. *See Aranson v. Schroeder,* 140 N.H. 359, 671 A.2d 1023, 1030 (1995); *see also Mountain States Tel. & Tel. v. DiFede,* 780 P.2d 533 (Colo.1989) (citing cases). The defendant urges this Court to apply a liberal analysis whenever a party has put an attorney-client communication at issue, such as the test promulgated in *Hearn v. Rhay,* 68 F.R.D. 574 (E.D.Wash.1975). The *Hearn* court stated that "a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct" when the following conditions exist: "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *Id.* at 581.

The liberal *Hearn* test has been criticized by many jurisdictions as potentially chilling the freedom to engage in confidential communications by a client with his or her attorney, causing an increase in litigation costs concerning discovery disputes, and tending to favor wealthier litigants. *See Remington Arms Co. v. Liberty Mutual Insurance Co.,* 142 F.R.D. 408, 413 (D.Del.1992); *Metropolitan Life Insurance Co. v. Aetna Casualty & Surety Co.,* 249 Conn. 36, 730 A.2d 51, 60 (1999); *Aranson,* 671 A.2d at 1030. Instead, those jurisdictions apply a stricter test to determine if there has been a waiver of the privilege, holding that a party has waived the attorney-client privilege "only when the contents of the legal advice is integral to the outcome of the legal claims of the action." *Metropolitan Life,* 730 A.2d at 60 (citing *Remington Arms Co.,* 142 F.R.D. at 412–15). That is, the contents of the communication is integral to the outcome of the litigation in situations where a party specifically pleads, as an element of the claim, his or her reliance on an attorney's advice, or voluntarily testifies regarding portions of the actual advice contained in the communication, or places in issue the nature of the attorney-client relationship during the course of the litigation. In those instances, we are satisfied that a party has waived the right to confidentiality by placing the content of the communication directly in issue and "the issue cannot be determined without an examination of that advice." *Id.*

In *Metropolitan Life,* the Supreme Court of Connecticut reasoned that because the attorney-client privilege "was created 'to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observation of law and administration of justice'[,] * * * [e]xceptions to the attorney-client privilege should be made only when the reason for disclosure outweighs the potential chilling of essential communications." *Metropolitan Life,* 730 A.2d at 60 (quoting *Upjohn Co. v. United States,* 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). This Court has

consistently held that the attorney-client privilege "must be narrowly construed because it limits the full disclosure of the truth." *Callahan*, 641 A.2d at 61 (citing *von Bulow*, 475 A.2d at 1006). However, in light of its important purpose, we have stated that the attorney-client privilege "should not be whittled away by fine distinctions." *Williams v. Rhode Island Hospital Trust Co.*, 88 R.I. 23, 47, 143 A.2d 324, 337 (1958). Based upon these important policy considerations, we conclude that the more stringent analysis promulgated in *Metropolitan Life* is the appropriate test for determining whether an implicit waiver of the attorney-client privilege has been made in a particular case. This determination turns on whether the actual content of the attorney-client communication has been placed in issue such that the information is actually required for the truthful resolution of the issues raised in the controversy.

Applying the more strict analysis to the case at hand, defendant has made no showing that the information contained in the documents is integral to plaintiff's claims, namely negligence and breach of contract, nor has there been a showing that the information sought is relevant to defendant's defense to those claims. Nor are we persuaded that defendant could conceivably make such a showing. In order to establish an entitlement to damages (attorneys' fees incurred in connection with defending the underlying lawsuit), plaintiff produced copies of invoices presented by HCPW and paid by plaintiff. We are satisfied that the substantive content of the correspondence between HCPW and plaintiff is not necessary to prove damages in a negligence and breach of contract action; instead, the reasonableness of the attorneys' fees can be determined independently by expert testimony, without resorting to disclosure of the actual advice given by HCPW to plaintiff.

Furthermore, the mere fact that plaintiff made a claim for attorneys' fees as part of the claim for damages does not indicate a waiver of the attorney-client privilege. We agree with the court in *Metropolitan Life* that "[m]erely because the [attorney-client] communications are relevant does not place them at issue." *Metropolitan Life*, 730 A.2d at 61 (citing *Remington Arms Co.*, 142 F.R.D. at 415). Further, we follow the sentiment of the court in *Metropolitan Life* that "[i]f admitting that one relied on legal advice in making a legal decision put the communications relating to the advice at issue, such advice would be at issue whenever the legal decision was litigated" and that "[i]f that were true, the at issue doctrine would severely erode the attorney-client privilege and undermine the public policy considerations upon which it is based." *Metropolitan Life*, 730 A.2d at 61.

■ Additionally, we conclude that when confronted with a request for discovery of attorney-client communications that may be discoverable pursuant to our decision herein, a hearing justice should conduct an *in camera* review of the documents before issuing a ruling. Otherwise, it is impossible for the hearing justice to determine whether the content of the communications is in fact integral to the outcome of an issue in the case.

For the foregoing reasons, the plaintiff's petition for certiorari is granted and the order of the Superior Court is quashed. The papers of the case are remanded back to the Superior Court for further proceedings consistent with this decision.