State Farm Fire and Casualty Company ("State Farm"), the defendant in an action pending in the Coffee Circuit Court, petitions for a writ of mandamus directing Judge Thomas E. Head III to vacate his order denying State Farm's motion to compel production of documents and directing Judge Head to grant that motion. We grant the petition in part and deny it in part.
In 1997, Barbara Carrington and her brother, Gary Brown, among others, were sued by other relatives in connection with a dispute concerning whether the body of Milton Harvey Brown III, Carrington and Brown's deceased brother, was to be cremated or buried. See SCI Alabama Funeral *Page 370 Servs., Inc. v. Brown, 770 So.2d 97 (Ala.Civ.App. 1999). Carrington and Brown sought a defense and indemnity from State Farm, under their homeowner's insurance policies. State Farm agreed to provide them with a defense, under a reservation of rights. After investigating, however, State Farm concluded that Carrington and Brown were not entitled to coverage under their policies. State Farm notified Carrington and Brown that it would not provide coverage, but it allowed them a transition period in which to hire new defense counsel. After State Farm had denied coverage, but before trial, Carrington and Brown were dismissed from theSCI Alabama Funeral Services lawsuit.
Carrington and Brown sued State Farm and two of its agents, alleging fraud; fraudulent suppression; breach of contract; bad-faith failure to investigate; bad-faith refusal to defend; and negligent or wanton hiring, training, and supervising of agents and personnel. Carrington and Brown later dismissed the individual agents. The trial court entered a summary judgment for State Farm as to all of Carrington and Brown's claims except for their breach-of-contract and bad-faith claims.
State Farm argues that Carrington and Brown's only claim based on "economic injury" is a claim for the legal fees and expenses they say they incurred in defending themselves in the SCI Alabama FuneralServices action, fees and expenses they say they incurred as a result of State Farm's denial of coverage. In their depositions, Carrington and Brown testified that they owed their attorneys $25,000 and $19,000, respectively. Although State Farm made specific discovery requests, Carrington and Brown did not during their depositions produce the bills from their attorneys. State Farm says that during those depositions Carrington and Brown agreed that State Farm was entitled to copies of the bills, but State Farm says it did not receive them for more than three more months. Randall B. James submitted a statement for legal services rendered on behalf of Carrington, for $13,687.50; Joseph G. Stewart, Jr., submitted a statement for legal services rendered and expenses incurred on behalf of Brown, for $16,042.50.
State Farm served a subpoena duces tecum on nonparties James and Stewart, calling for them to appear for depositions and to produce the following documents:
 "Those portions of any record(s) and files regarding Barbara Carrington and Gary Brown, including but not limited to: correspondence, calendars, pleadings, drafts, billing files, time sheets, statement of accounts [sic], lists of expenses, retainers or payments on account, collection letters, notices of past due accounts, letters of referral, referral agreements, legal services agreements, contracts, and retainer agreements."
Both James and Stewart objected to producing their files, arguing that the requested documents were protected from disclosure by the attorney-client privilege and the work-product doctrine and that the documents were not relevant or material to the lawsuit against State Farm. State Farm says that neither lawyer produced, pursuant to Rule 45(d)(2), Ala.R.Civ.P., a "privilege log" supporting his claim of privilege.
State Farm moved to compel production, arguing that Carrington and Brown had waived the attorney-client privilege (1) by making facts and circumstances of their earlier legal representation the central issue in their current action against State Farm; (2) by claiming damages to compensate them for the fees and expenses they say they incurred in that earlier representation; *Page 371 
(3) by voluntarily offering deposition testimony as to the fees and expenses; and (4) by voluntarily producing invoices from their attorneys for the fees and expenses. The trial court denied the motion to compel because, it said, "the requested information and materials are protected by the attorney-client privilege and . . . Brown and Carrington have not waived said privilege, either directly or constructively, by disclosure of any `significant part of the matter or communication' with their former counsel."
State Farm argues that the trial court abused its discretion in refusing to compel production because, it says, Carrington and Brown had directly and constructively waived the attorney-client privilege. James and Stewart have agreed to be deposed by State Farm, but State Farm maintains that it cannot conduct a meaningful examination without the records that are the basis of Carrington and Brown's claims of economic loss. State Farm points out that Carrington and Brown's complaint specifically alleges that, as a proximate result of State Farm's refusal to provide coverage, they "incurred legal expenses and will do so in the future." In deposition, Carrington and Brown identified the legal expenses as fees and expenses incurred in hiring and being represented by Stewart and James. Thus, says State Farm, Carrington and Brown injected into the case the issue of their legal expenses and the basis therefor, and, by doing so, waived any attorney-client privilege they may have had in connection with the documents upon which the billing for the legal services was based.
State Farm also notes that Rule 45(c)(3)(A)(iii), Ala.R.Civ.P., provides that a nonparty may object to a subpoena duces tecum if it "requires disclosure of privileged or other protected matter and noexception or waiver applies." (Emphasis added.) According to State Farm, James and Stewart objected to the subpoenas as requiring disclosure of privileged material, but, State Farm says, they did not show that the privilege had not been waived. State Farm further argues that Carrington and Brown had waived the privilege before James and Stewart objected, thus rendering the lawyers' objections ineffective, and that Carrington and Brown have not filed objections to the discovery of their files — the unsupported objections, State Farm says, came from the nonparty lawyers.
 I. Constructive Waiver
State Farm, relying on the "doctrine of issue injection," contends that Carrington and Brown waived the attorney-client privilege. State Farm argues that it is entitled to review the requested materials because, it says, those records and files provide "the only means of substantiating and testing the reasonableness and the accuracy of the fees claimed." State Farm also contends that whether Carrington and Brown mitigated damages is a proper subject of inquiry. State Farm supports this contention by arguing that it needs the discovery to deal with the question why Carrington and Brown chose separate attorneys for one phase of the litigation, after having previously been represented by the same attorney, and the question whether the subsequent representation by separate attorneys constituted an unnecessary duplication of effort; the question why the amounts they testified they owed their attorneys differed from the balances due shown on the attorneys' statements; and the question why the attorneys, according to State Farm, have made no effort to collect the fees Carrington and Brown claim to owe them.
Carrington and Brown point out that it is undisputed that State Farm denied a defense in the underlying action and that *Page 372 
as a result they incurred damage in that they had to retain their own attorneys. They say that if State Farm had properly afforded them a defense under the homeowner's insurance policies, it would have enjoyed an attorney-client privilege with them. State Farm, they say, chose not to do so and must now live with the consequences of its actions. Carrington and Brown contend the issue they present in their lawsuit is whether State Farm in bad faith failed to investigate and in bad faith eventually denied their request for a defense under their policies. They further contend that State Farm has not defended their present action by claiming that the fees or the quality of representation in the earlier action was wrongful, unreasonable, or otherwise improper. They support this contention by referring to State Farm's answer. However, we have reviewed that answer, and we conclude that it contains denials sufficient to put in issue the reasonableness of the attorney fees.
This Court first visited the issue of waiver by issue injection in Exparte Malone Freight Lines, Inc., 492 So.2d 1301 (Ala. 1986), where a personal-injury victim had secured a foreign judgment against a trucking company; she then filed an action in Alabama to enforce the foreign judgment. The trial court ordered the trucking company to produce its attorney's entire claim file regarding the accident that had led to the foreign judgment. The trucking company, contending that many documents in the attorney's file were privileged under the "work-product doctrine," petitioned this Court for a writ of mandamus preventing the discovery. This Court held that the trial court's production order was proper, concluding that the trucking company had put the privileged material at issue by asserting, in the action to enforce the judgment, that that judgment had been obtained by fraud and by supporting that defense with an affidavit of its attorney. In denying the petition for the writ, this Court relied on the reasoning in two federal cases: Garfinkle v. ArcataNational Corp., 64 F.R.D. 688 (S.D.N.Y. 1974), and Haymes v. Smith,73 F.R.D. 572 (W.D.N.Y. 1976). In Garfinkle, the district court held that the defendant had waived the right to assert the attorney-client privilege:
 "Defendant has clearly injected [an] opinion letter into [the] case as a relevant matter and plaintiff is entitled to probe into the circumstances surrounding the issuance of the letter. [Plaintiff] cannot be limited to the letter itself — the finished product. He is entitled to know how the letter came into being. Plaintiff argues appropriately that defendant simply cannot use the letter as both a sword and a shield."
64 F.R.D. at 689.
Carrington and Brown maintain that Malone Freight Lines is distinguishable. They rely upon Ex parte Great American Surplus LinesInsurance Co., 540 So.2d 1357 (Ala. 1989), in which this Court declined to find a waiver based upon disclosure of an attorney's conclusion that there was no coverage under an insurance policy. In Great American, this Court distinguished the situation whereby a client injects advice of counsel as justification for his conduct and then attempts, based upon the attorney-client privilege, to avoid further inquiry. However, GreatAmerican turned upon the conclusion that the subject communication was "work product" and was therefore entitled to protection pursuant to the "work-product" doctrine. We deal here today only with the attorney-client privilege. As far as the materials before us and our own research indicate, we have here a question of first impression as to how the doctrine of waiver might apply to cause a waiver of the attorney-client privilege, based upon "issue injection," *Page 373 
in a context where the parties claiming the privilege are seeking to recover, as an element of damages, the attorney fees they claim to have incurred in a related lawsuit.
State Farm urges us to follow Ideal Electronic Security Co. v.International Fidelity Insurance Co., 129 F.3d 143 (D.C. Cir. 1997). The United States Court of Federal Claims addressed that case in EnergyCapital Corp. v. United States, 45 Fed. Cl. 481 (2000):
 "In Afro-Lecon, Inc. v. United States, 820 F.2d 1198, 1204-05 (Fed. Cir. 1987), the Federal Circuit endorsed a test set forth in Hearn v. Rhay, 68 F.R.D. 574
(E.D.Wash. 1975). The party has waived the attorney client privilege if:
 "`(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.'
 "Zenith Radio Corp. v. United States, 764 F.2d 1577, 1579 (Fed. Cir. 1985) (emphasis added), quoting Hearn v. Rhay, 68 F.R.D. at 581.
". . . .
 "Ideal Electronic Security Co. v. International Fidelity Ins. Co., 129 F.3d 143, 151-52 (D.C. Cir. 1997), explains that when a party seeks attorneys' fees, that party has placed all bills from the attorneys `in issue.' In Ideal, International Fidelity Ins. Co. (IFIC) was seeking attorneys' fees based on an indemnification agreement. IFIC produced redacted bills and the District Court awarded some attorneys' fees but refused to award any money for a redacted bill. Id. at 147.
 "The D.C. Circuit rejected this approach. IFIC `effectively waived its attorney-client privilege with regard to all communications going to the reasonableness of the fees claimed when it placed the purportedly privileged matters in dispute by claiming indemnification for the attorney's fees. . . . If IFIC [on remand] declines to disclose the redacted portions of the billing statements, then the entire claim for fees must be denied.' Id. at 146. `As a practical matter, the reasonableness of any portion of the billing statement can only be determined by examining all billing statements pertaining to the legal services provided as a whole.' Id. at 151.
 "Other cases take this approach. See, e.g., Potomac Electric Power Co. v. California Union Ins. Co., 136 F.R.D. 1, 4-5 (D.D.C. 1990)."
45 Fed. Cl. at 486 (final emphasis added). Ideal Electronic does not necessarily stand as authority for requiring Carrington and Brown to disclose their attorneys' entire files related to the earlier action. The court in Ideal Electronic required production only of all of the billing statements, without redaction, "and any other communications going to the reasonableness of the amount of the fee award." 129 F.3d at 152. Here, Carrington and Brown have already produced the billing information, without any redactions.
The view supporting Carrington and Brown's position is well expressed in Mortgage Guarantee Title Co. v. Cunha, 745 A.2d 156 (R.I. 2000):
 "Specifically, plaintiff argued that production of copies of the invoices from HCPW [the law firm] was sufficient to satisfy the claim for attorneys' fees, and that production of the underlying communications would be a violation of the attorney-client privilege. Further, plaintiff *Page 374 
argued that the hearing justice erred and abused her discretion when finding that plaintiff had waived the attorney-client privilege by making the claim for attorneys' fees. For the following reasons, we agree with plaintiff's contention that the inclusion of attorneys' fees in the claim for damages does not in itself imply a waiver of the attorney-client privilege.
 "It is well established that `communications made by a client to his attorney for the purpose of seeking professional advice, as well as the responses by the attorney to such inquiries, are privileged communications not subject to disclosure.' As a part of that general rule, attorney-client communications are protected only if the privilege has not been explicitly or implicitly waived by the client. In the instant case, defendant argues that by including a claim for attorneys' fees in the claim for damages, plaintiff implicitly waived the privilege as it relates to the communications between plaintiff and HCPW. This Court has not yet addressed the question of whether a demand for attorneys' fees made in connection with a claim for damages amounts to an implicit waiver of the attorney-client privilege. We shall now determine the appropriate rule to apply in such a case.
 "The principle that the attorney-client privilege is implicitly waived when a party puts an attorney-client communication at issue in a case is well accepted in American jurisprudence. See Aranson v. Schroeder, 140 N.H. 359, 671 A.2d 1023, 1030 (1995); see also Mountain States Tel. Tel. v. DiFede, 780 P.2d 533
(Colo. 1989) (citing cases). The defendant urges this Court to apply a liberal analysis whenever a party has put an attorney-client communication at issue, such as the test promulgated in Hearn v. Rhay, 68 F.R.D. 574
(E.D.Wash. 1975). The Hearn court stated that `a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct' when the following conditions exist: `(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.' Id. at 581.
 "The liberal Hearn test has been criticized by many jurisdictions as potentially chilling the freedom to engage in confidential communications by a client with his or her attorney, causing an increase in litigation costs concerning discovery disputes, and tending to favor wealthier litigants. See Remington Arms Co. v. Liberty Mutual Insurance Co., 142 F.R.D. 408, 413
(D.Del. 1992); Metropolitan Life Insurance Co. v. Aetna Casualty Surety Co., 249 Conn. 36, 730 A.2d 51, 60 (1999); Aranson, [140 N.H. at 370,] 671 A.2d at 1030. Instead, those jurisdictions apply a stricter test to determine if there has been a waiver of the privilege, holding that a party has waived the attorney-client privilege `only when the contents of the legal advice [are] integral to the outcome of the legal claims of the action.' Metropolitan Life, [249 Conn. at 52-53,] 730 A.2d at 60 (citing Remington Arms Co., 142 F.R.D. at 412-15). That is, the contents of the communication [are] integral to the outcome of the litigation in situations where a party specifically pleads, as an element of the claim, his or her reliance on an attorney's advice, or voluntarily testifies regarding portions of the actual advice contained in the communication, *Page 375 or places in issue the nature of the attorney-client relationship during the course of the litigation. In those instances, we are satisfied that a party has waived the right to confidentiality by placing the content of the communication directly in issue and `the issue cannot be determined without an examination of that advice.' Id.
 "In Metropolitan Life, the Supreme Court of Connecticut reasoned that because the attorney-client privilege `was created "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observation of law and administration of [justice,]" . . . [e]xceptions to the attorney-client privilege should be made only when the reason for disclosure outweighs the potential chilling of essential communications.' Metropolitan Life, [249 Conn. at 52,] 730 A.2d at 60 (quoting Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). This Court has consistently held that the attorney-client privilege `must be narrowly construed because it limits the full disclosure of the truth.' However, in light of its important purpose, we have stated that the attorney-client privilege `should not be whittled away by fine distinctions.' Based upon these important policy considerations, we conclude that the more stringent analysis promulgated in
Metropolitan Life is the appropriate test for determining whether an implicit waiver of the attorney-client privilege has been made in a particular case. This determination turns on whether the actual content of the attorney-client communication has been placed in issue such that the information is actually required for the truthful resolution of the issues raised in the controversy.
 "Applying the more strict analysis to the case at hand, defendant has made no showing that the information contained in the documents is integral to plaintiff's claims, namely negligence and breach of contract, nor has there been a showing that the information sought is relevant to defendant's defense to those claims. Nor are we persuaded that defendant could conceivably make such a showing. In order to establish an entitlement to damages (attorneys' fees incurred in connection with defending the underlying lawsuit), plaintiff produced copies of invoices presented by HCPW and paid by plaintiff. We are satisfied that the substantive content of the correspondence between HCPW and plaintiff is not necessary to prove damages in a negligence and breach of contract action; instead, the reasonableness of the attorneys' fees can be determined independently by expert testimony, without resorting to disclosure of the actual advice given by HCPW to plaintiff.
 "Furthermore, the mere fact that plaintiff made a claim for attorneys' fees as part of the claim for damages does not indicate a waiver of the attorney-client privilege. We agree with the court in Metropolitan Life that `[m]erely because the [attorney-client] communications are relevant does not place them at issue.' Metropolitan Life, [249 Conn. at 54,] 730 A.2d at 61 (citing Remington Arms Co., 142 F.R.D. at 415)."
745 A.2d at 158-60. (Emphasis added.) (Some citations omitted.)
We agree with Carrington and Brown that Malone Freight Lines is distinguishable. We are not here presented with a circumstance where a party has injected the content of the communications as an integral element of its claim, as was the case in Malone Freight Lines, where the party invoking the privilege had challenged the validity of a foreign judgment and in support of its challenge had submitted *Page 376 
an affidavit of its attorney. We find the Rhode Island court's rationale and holding persuasive.
The question whether a party has implicitly waived the attorney-client privilege "turns on whether the actual content of the attorney-client communication has been placed in issue [in such a way] that the information is actually required for the truthful resolution of the issues raised in the controversy." See Mortgage Guarantee Title Co. v.Cunha, 745 A.2d at 160. State Farm's stated need for the privileged materials turns entirely on its legitimate interest in challenging the reasonableness of the attorney fees. However, the substantive content of the attorneys' files related to the earlier action is not essential to proof of Carrington and Brown's damages claim in their breach-of-contract and bad-faith action. Under the rule stated in Mortgage Guarantee TitleCo., we conclude that the mere fact that Carrington and Brown have claimed damages to compensate for the attorney fees they incurred in the earlier action does not indicate a waiver of the attorney-client privilege.
The reasonableness of the attorney fees can be determined independently by use of expert testimony, without disclosure of the documents relating to the actual advice given by the attorneys to Carrington and Brown. Id. Competent attorneys can examine the pleadings, discovery materials, and nonprivileged communications and review the invoices and from that examination form an opinion as to the number of hours that should have been expended on the case and the number of attorneys who would have had to work on it, and then render an opinion as to the reasonableness of the fees charged.
State Farm suggests several reasons it says it needs to see the attorneys' files — to determine why in the earlier action Carrington and Brown hired separate attorneys, to determine whether the work of the separate attorneys was an unnecessary duplication of effort, and to determine why the amounts Carrington and Brown testified they owed the attorneys differed from the amounts shown on the attorneys' statements. It appears that each of these reasons can be dealt with without requiring Carrington and Brown to disclose otherwise privileged information dealing with substantive issues in the earlier lawsuit. The court in Ideal Electronic required, in addition to production of billing statements, disclosure of other communications going to the reasonableness of the fee award. In this respect, any documents relating to communications between Carrington and Brown and their attorneys dealing with the reasonableness of the fees, redacted where necessary to protect substantive content, would be subject to discovery. Likewise, State Farm is entitled, subject to similar redaction, to production of any other documents dealing with the reasonableness or the amount of the fees, such as calendars, billing files, time sheets, statements of account, lists of expenses, retainers or payments on account, collection letters, notices of past-due accounts, letters of referral, referral agreements, legal-services agreements, contracts, and retainer agreements.
 II. Direct Waiver
State Farm contends that Carrington and Brown directly waived the attorney-client privilege by producing invoices and testifying as to the fact of representation by the attorneys and as to the expenses they claim to have incurred. This conduct on the part of Carrington and Brown was consistent with their claim for damages to compensate for the economic loss they claim to have suffered by having to incur attorney fees. We have held in *Page 377 
Part I of this opinion that the mere fact that in their current lawsuit Carrington and Brown made a claim for damages to compensate for the attorney fees they had incurred in the earlier lawsuit does not indicate a waiver of the attorney-client privilege. We must conclude, also, that Carrington and Brown's production of evidence limited to matters essential to support that claim cannot be a waiver.
We also must conclude that State Farm's contention that Carrington and Brown failed to object to discovery of the attorneys' files is without merit, considering the objections lodged by their attorneys in response to the subpoenas duces tecum addressed to the attorneys. The attorney-client privilege belongs solely to the client, not the attorney. Swain v. Terry, 454 So.2d 948, 953-54 (Ala. 1984). We have no basis upon which to conclude that the attorneys' invocation of the privilege on behalf of their clients Carrington and Brown was without authorization from Carrington and Brown. Finally, the record does not reflect that State Farm raised in the trial court Carrington and Brown's failure to attach a "privilege log" pursuant to Rule 45(d)(2); consequently, State Farm has waived any procedural irregularity in this respect. Andrews v. Merritt Oil Co., 612 So.2d 409 (Ala. 1992).
 III. Conclusion
We grant the petition to the extent of directing Judge Head to require production of any documents dealing with the reasonableness or the amount of the attorney fees, subject to Carrington and Brown's rights of redaction, as previously noted. In all other respects, the petition is denied.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
Moore, C.J., and Houston, See, Brown, Harwood, Woodall, and Stuart, JJ., concur.