DECISION RE: PLAINTIFFS' MOTIONS TO COMPEL PRODUCTION OF DOCUMENTS
These motions to compel production of documents, filed by the plaintiffs in these three related actions, arise out of a discovery dispute between the parties over documents that the defendants claim are protected by the attorney-client and work product privileges. The focus of this present dispute concerns the discoverability of 187 documents listed in the defendants' revised privilege log.
In its Decision, this Court addresses the legal issues regarding the attorney-client and work product privileges presented by the parties. This Court orders the defendants to review the disputed documents, in light of this Decision, and to produce any additional documents or redacted portions thereof that are properly discoverable. This Decision is without prejudice to the plaintiffs' rights, thereafter, to renew their motions to compel as to any documents that remain in dispute.
 FACTUAL BACKGROUND AND PROCEDURAL HISTORY
The facts relevant to this matter are largely undisputed. On April 11, 2003, the plaintiffs served upon the defendants requests for production of documents. See Deft's Mem. In Opp. at 2. In response to those requests, the defendants produced "hundreds of boxes of documents."Id. However, in connection with plaintiffs' requests, the defendants also withheld a number of documents on the basis of the attorney-client privilege, the joint defense privilege and/or the work product doctrine.Id. Defendants provided the plaintiffs with a lengthy privilege log, identifying the documents that they withheld. Id. Plaintiffs then moved to compel production of certain documents identified in the defendants' privilege log. Id . at 3. During a "meet and confer" conference held on November 23, 2004, the defendants provided the plaintiffs with a revised privilege log, and the parties were able to narrow the number of documents in dispute to approximately 200. Id. Following a later status conference with the Court, the defendants supplied to the plaintiffs an additional 14 documents listed on their revised privilege log, leaving 187 documents in dispute. This Court directed the defendants to submit to it the disputed documents should later in camera review of them become necessary. The defendants complied with this directive.
Plaintiffs have moved to compel the production of these disputed documents and have filed several memoranda in support of their position. Defendants have responded with objections to the plaintiffs' motions and have submitted several exhibits to support their objections.
Plaintiffs first argue that the documents identified in the defendants' privilege log as subject to the attorney-client privilege are not privileged. Plaintiffs support their claim by arguing that those documents fall into at least one of the following five categories which make them non-privileged attorney-client communications:
 (1). Documents that do not show on their face that an employee of the defendant had the authority to obtain or act on legal advice on behalf of the corporation.
 (2). Memoranda between non-lawyer corporate employees which have been carbon copied or forwarded to legal counsel for screening purposes.
 (3). Communications between counsel and the defendants' employees that were shared with third parties or used in prior litigation.
 (4). Handwritten notes which simply identify an attorney, but that do not contain confidential legal advice.
 (5). Communications where the dominant purpose of the memoranda is not to provide or obtain legal advice or assistance, but rather to provide business advice.
Plaintiffs contend further that any attorney-client privilege asserted by the defendants as to these disputed documents has been waived implicitly because the documents are critical to resolution of the claims asserted in this case. Plaintiffs next argue that the documents identified in the defendants' privilege log as subject to the work product privilege are not privileged as they were not prepared in anticipation of litigation.
Defendants respond that they have properly asserted the attorney-client privilege as to the disputed documents. In response to the plaintiffs' arguments, defendants assert:
 (1). Employees of the defendants do not need to have special "authority" to seek or act upon legal advice before a document is considered privileged.
 (2). Internal memoranda sent between non-attorney employees of the defendants which are carbon copied to legal counsel are privileged if they contain or seek advice of counsel.
 (3). None of the documents identified on the privilege log have been disclosed to "non-joint defendant" third parties or were used in prior litigation.
 (4). The handwritten notes were either written by an attorney or reflect an attorney's legal advice and, thus, are privileged.
 (5). All documents for which a privilege was claimed were directed at the defendants' attorneys for the purpose of seeking legal, not business, advice.
Defendants also argue that they have not waived the attorney-client privilege as to any of the disputed documents. Finally, the defendants contend that, to the extent that the attorney-client privilege does not cover the disputed documents listed on their privilege log, those documents are protected work product.
This Court will address these legal issues regarding privilege inseriatim. This Decision will establish a legal rubric to guide the parties as to the further discoverability of the documents at issue.
 ANALYSIS A. ISSUES OF ATTORNEY-CLIENT PRIVILEGE
It is well established in this jurisdiction that "communications by a client to his or her attorney for the purpose of seeking professional advice, as well as the responses made by the attorney to such inquiries, are privileged communications not subject to disclosure." State v.Grayhurst, 852 A.2d 491, 512 (R.I. 2004) (citing Mortgage Guarantee Title Co. v. Cunha, 745 A.2d 156, 158-59 (R.I. 2000)); Callahan v.Nystedt, 641 A.2d 58, 61 (R.I. 1994)). To successfully invoke the attorney-client privilege, the following elements must be established:
 (1) the asserted holder of the privilege is or sought to become a client;
 (2) the person to whom the communication was made (a) is [a] member of a bar of a court, or his or her subordinate and (b) in connection with this communication is acting as a lawyer;
 (3) the communication relates to a fact of which the attorney was informed (a) by his or her client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort;
 (4) the privilege has been (a) claimed and (b) not waived by the client.
State v. von Bulow, 475 A.2d 995, 1004 (R.I. 1984) (quoting United Statesv. Kelly, 569 F.2d 928, 938 (5th cir.), cert.denied, 439 U.S. 829 (1978)). Of course, the burden of establishing the existence of the attorney-client privilege rests on the party seeking to prevent disclosure of protected information. Id. at 1005.
Generally, attorney-client communications are protected unless the privilege has been explicitly or implicitly waived by the client.Grayhurst, 852 A.2d at 512. The Rhode Island Supreme Court has cautioned, however, that "exceptions to the attorney-client privilege should be made only when the reason for disclosure outweighs the potential chilling of essential communications." Mortgage Guarantee Title Co. v. Cunha, 745 A.2d at 159 (citing Upjohn Co. v. UnitedStates, 449 U.S. 383 389-90 (1981)). The attorney-client privilege may be waived through disclosure of a confidential communication to a third party. See, e.g., State v. von Bulow, 475 A.2d 995 (R.I. 1984). Waiver also may occur implicitly "when a party puts an attorney-client communication at issue. . . ." See, e.g., Grayhurst, 852 A.2d at 512. This type of waiver occurs "[w]hen the client's conduct touches a certain point of disclosure, [as] fairness requires that his privilege shall cease." Finally, waiver can occur "when the contents of the legal advice is integral to the outcome of the legal claims of the action."See, e.g., Mortgage Guarantee Title Co. v. Cunha, 745 A.2d at 159. Mindful of these precepts, this Court will now address the arguments advanced by the parties.
1. Whether Corporate Employees Need Corporate Authority to Seek or Actupon Legal Advice for their Communications with Corporate Counsel to beProtected by the Attorney-Client Privilege
The first issue is whether corporate employees need special "authority" from the corporation to seek or act upon legal advice before a document is considered privileged. Plaintiffs contend that documents between corporate employees and counsel that do not show on their face that the employee had the authority to obtain or act upon legal advice on behalf of the corporation are not privileged. Defendants respond that employees of the corporation do not need to have special "authority" to seek or act upon legal advice to make such documents privileged.
This issue has never been addressed by the Rhode Island Supreme Court. A number of federal courts, including the United States Supreme Court, however, have ruled on the issue. In Upjohn Co. v. U.S., the United States Supreme Court clearly rejected the so called "control group" test for the broader "subject-matter test." 449 U.S. 383, 390 (1981). The "control group" test upholds the attorney-client privilege only if the individual speaking to the attorney "was vested by the corporation with the authority both to seek legal advice and to participate significantlyin the corporation's response to this advice." See In re Avantel,343 F.3d 311, 315 n. 1 (5th Cir. 2003) (emphasis added). Under the broader "subject matter" test, communications made between an attorney and virtually any employee within a corporation seeking or acting upon legal advice from the attorney are protected. Id. Thus, an employee in a corporate setting no longer needs "authority" to seek or act upon legal advice for a communication with counsel to be privileged.
Since the proper focus under the "subject matter" test is whether legal advice is sought or acted upon by the employee and whether it concerns the duties of employment, and not whether the employee had "authority," see In re Avantel, 342 F.3d at 315 n. 1, the plaintiffs' argument as to privilege must be rejected. Defendants thus are ordered to review the disputed documents in this category; they may maintain a privilege only as to any communication where a corporate employee sought or acted upon legal advice concerning the duties of his or her employment. Any documents falling outside the scope of this privilege must be produced.
2. Whether Memoranda Exchanged between Non-Attorney CorporateEmployees are Protected by the Attorney-Client Privilege when they areCarbon Copied to Corporate Counsel
The second issue is whether memoranda exchanged between non-attorney corporate employees that are carbon-copied, or "cc'd," to legal counsel are privileged. This issue, too, is one of first impression in this jurisdiction, although a number of federal courts have considered the question.
The weight of authority supports the proposition that merely carbon copying communications made between two non-attorneys to corporate in-house counsel is "clearly insufficient to establish the privilege. . . ." See In re Avantel, 343 F.3d at 320-21; see also Yurik v. LibertyMutual Ins. Co., 201 F.R.D. 465, 471 (D.C. Az. 2001) (holding that the defendant failed to offer any legal authority establishing that the attorney-client privilege extends to communications which are carbon copied to house counsel); Cont'l Ill. Nat'l Bank and Trust Co. ofChicago v. Indemnity Ins. Co. of N. Am., 1989 U.S. Dist. LEXIS 13004 at *8 (N.D. Ill. 1989) (stating that a letter carbon copied to an attorney fell beyond the scope of the attorney-client privilege because it was not primarily directed to an attorney, did not seek legal advice, and merely served to keep the attorney informed of the content of the letter); Royal Surplus Lines Ins. v. Sofamor Danek Group,190 F.R.D. 463, 475 (W.D. Tenn. 1998) ("Simply sending a carbon copy to in-house counsel does not cloak a routine business communication with attorney-client privilege. The communication must have been for the purpose of securing legal advice."). It is also true, however, that carbon copying a document to an attorney does not automatically disqualify it from being protected by the attorney-client privilege.See In re Avantel, 343 F.3d at 321. Thus, the proper focus of the inquiry must be placed on the subject matter of the communication,i.e., whether the communication was made for the purpose of securing or acting upon legal advice. Id.; see also Royal Surplus Lines Ins.,190 F.R.D. at 475; Amway Corp. v. Proctor Gamble Co., 2001 U.S. Dist. LEXIS 4561 at *22-23 (W.D. Mich. 2001). This analysis squares with this state's rule of protecting, as privileged, only those communications that are made by a client to his or her attorney "for the purpose of seeking professional advice. . . ." See Grayhurst, 852 A.2d at 512.
Consistent with this state and federal authority, therefore, a communication made between two non-attorney corporate employees which is merely carbon copied to the corporation's counsel will be protected only if the communication was made for the purpose of securing primarily either: (1) an opinion on law; (2) legal services; or (3) assistance in some legal proceeding. See Rosati, 660 A.2d at 265. Conversely, a communication that was made for the purpose of securing business advice or public relations strategies, that was generated for informational purposes, or that consists of any other incidental communication to an attorney should not be protected by the attorney-client privilege, regardless of whether it was carbon copied to corporate counsel.
In this case, therefore, the defendants may not simply rely on the fact that a document between non-attorney corporate employees was carbon copied or "cc'd" to counsel for the corporation to claim that the document is protected by the attorney-client privilege. They must revisit this category of documents listed on their privilege log in light of these precepts and produce to plaintiffs any such communications that were not made for the purposes of seeking or acting upon legal advice. Defendants may continue to assert the attorney-client privilege as to any of these documents that were made for the primary purpose of securing an opinion on the law, legal services or assistance in a legal proceeding.
3. Whether Documents used in Prior Litigation or Shared with Non-PartyTrade Organizations are Protected by the Attorney-Client Privilege
The third argument raised by the plaintiffs actually encompasses two separate legal questions: (1) whether communications allegedly withheld by the defendants that were used in prior litigation must be disclosed; and (2) whether documents shared between the defendants and non-party trade organizations to which they belonged are privileged. As to the first issue, it hardly could be claimed that any documents disclosed in prior litigation would remain "confidential" — an essential element of the attorney-client privilege. See generally von Bulow, 475 A.2d 995
(R.I. 1984). Accordingly, to the extent that they have not done so already, the defendants should disclose any such documents to the plaintiffs.
With respect to the second issue, it is well-established that the disclosure of confidential communications to a third party generally will result in a waiver of the attorney-client privilege. See id.
Although the Rhode Island Supreme Court has not considered this issue, a number of jurisdictions recognize certain exceptions to this rule.
One of the most common exceptions is the so-called "joint defense" or "common-interest" rule. See Cavallaro v. United States, 284 F.3d 236,249-52 (1st Cir. 2002). Under this doctrine, communications made between a lawyer and certain third parties remain privileged. Id. This type of protection is generally invoked when one counsel is representing two or more clients in the same action or when separate lawyers are representing two or more clients in a single action. Id. A number of courts have held, however, that communications between a non-party to the litigation also can qualify for the joint defense privilege.See Lugosch v. Congel, 219 F.R.D. 220, 238-39 (N.D.N.Y 2003); RoyalSurplus Lines Ins. Co. v. Sofamor Danek Group, Inc., 190 F.R.D. at 472;United States v. Duke Energy Corp., 214 F.R.D. 383, 385-91 (M.D.N.C. 2003).
When determining whether the joint defense privilege applies with respect to communications between a party and an entity that is not a party to the litigation, courts should "examine the actual or potential relationship of the parties" to establish whether a "shared interest in any potential litigation" exists. See Royal Surplus Lines Ins.,190 F.R.D. at 472 (citing Continental Oil Co. v. United States, 330 F.2d 347
(9th Cir. 1964)). Specifically, the weight of authority also favors "considering the actual or potential identity of interest which the parties share rather than limiting the privilege to communications occurring only after litigation commences." Id. (citing SCM Corp. v.Xerox Corporation, 70 F.R.D. 508, 513 (D.Conn. 1975)). Thus, "[t]he privilege protects the free flow of information for the purpose of receiving legal advice, either in contemplation of litigation or in attempting to avoid it. The common defense, however, must at least be foreseeable." Id. (citing Medcom Holding Co. v. Baxter Travenol Lab, 689F. Supp. 841, 845 (N.D. Ill. 1988) (noting "the privilege arises out of a need for a common defense, as opposed merely to a common problem"). As a result, one relying on the joint defense privilege must establish that: (1) there was existing litigation or a strong possibility of future litigation; and (2) the materials were provided for the purpose of mounting a common defense against it. Id.
As applied to the case at bar, it is unclear from the parties' memoranda as to the relationship between the defendants and the two trade groups, Western States Petroleum Association (WSPA) and the American Petroleum Institute (API), both prior to and during the litigation. Issues such as whether the defendants and the trade groups reasonably faced a palpable litigation threat at the time of their communications, whether the common interest between the trade groups and the defendants was primarily litigation rather than business focused, and whether their communications were made for the purpose of mounting a foreseeable common defense rather than addressing a common problem, are important to address in determining whether any joint defense privilege exists. With respect to communications between the defendants and these trade organizations, therefore, the defendants must review the disputed documents in light of the precepts outlined by this Court. If the defendants continue to assert the attorney-client privilege as to any remaining documents, they must present additional factual and legal support for such a claim. Without such information, it simply appears as if the defendants shared confidential information with third parties, thus negating the attorney-client privilege.
4. Whether Handwritten Notes are Protected by the Attorney-ClientPrivilege
The fourth issue is whether the handwritten notes in dispute are protected by the attorney-client privilege. The narrow issue involving handwritten notes also has not been explicitly addressed by the Rhode Island Supreme Court. As with the issue of corporate employees carbon copying their communications to corporate counsel, however, it is clear that simply placing an attorney's name on a handwritten note does not mean that a privilege exists. The relevant inquiry must be directed toward the subject matter of the document, i.e., whether it contains legal advice that was either given or received.
To make an accurate determination of whether handwritten notes are privileged, a number of factors must be considered, including the identity of the author of the notes and whether the notes reflect discussions from meetings or the attorney's own private thoughts.Chevron Texaco Corp., 241 F. Supp.2d at 1079. If the notes reflect meeting discussions, then information such as the purpose of and participants attending the meetings is relevant to determining if the defendants waived the privilege. Id.
Though the defendants' privilege log does provide limited insight into the circumstances surrounding the documents that the defendants claim are privileged, they have not provided enough information to enable this Court to make a determination as to whether the claim of privilege is properly asserted as to these handwritten notes. Defendants should reassess whether the communications in this category of disputed documents are protected by the attorney-client privilege. If defendants continue to assert a privilege with respect to any of these handwritten notes, they must present further factual and legal argument to support such a claim, including the identity of the author of such notes, whether they contain the advice of counsel and the identity of any such counsel, whether the legal advice in the communications predominates over any business advice and any further relevant contextual information such as the purpose of and participants in any meetings reflected by the notes.
5. Whether Memoranda which have the Dominant Purpose of ProvidingBusiness Rather than Legal Advice are Protected by the Attorney-ClientPrivilege
The fifth issue is whether memoranda which had the dominant purpose of providing business, rather than legal advice or assistance, are protected by the attorney-client privilege. This issue also has not been addressed specifically by the Rhode Island Supreme Court. A number of federal courts, however, have considered the issue. Additionally, as previously stated, our Supreme Court has held that only communications made for the purpose of securing primarily either: (1) an opinion onlaw; (2) legal services; or (3) assistance in some legal proceeding qualify under the attorney-client privilege. See Rosati, 660 A.2d at 265
(emphasis added).
The predominant view of the federal courts is that "for a communication to be privileged, it must have been made for the purpose of securing legal advice." In re Ford Motor Co., 110 F.3d 954, 965 (3rd Cir. 1997) (emphasis added); see also In re Subpoena Duces Tecum,731 F.2d 1032, 1037 (2nd Cir. 1984). Thus, "[t]he privilege does not protect an attorney's business advice." U.S. v. Chevron Texaco Corp.,241 F. Supp.2d 1065, 1076 (N.D. Ca. 2001); see also U.S. v. Philip Morris,Inc., 2004 U.S. Dist. LEXIS 27026 at *16-17 (D.C.D.C.); Women's InterartCenter, Inc. v. N.Y.C. Econ. Dev., 223 F.R.D. 156, 160 (S.D.N.Y. 2004). With respect to internal communications involving in-house counsel, a party "must make a `clear showing' that the `speaker' made the communications for the purpose of obtaining or providing legal advice."Chevron Texaco Corp., 241 F. Supp.2d at 1076 (quoting In re SealedCase, 737 F.2d 94 (D.C. Cir. 1984)). If legal and business advice are inextricably intertwined, "the legal advice must predominate over the business advice, and not be merely incidental, for the communications to be protected by the attorney client privilege." Philip Morris,Inc., 2004 U.S. Dist. LEXIS 27026 at *16. The proponent of the privilege must make "a clear showing that the communication was intended for legal advice." Id. at *17.; see also Chevron Texaco Corp.,241 F. Supp.2d at 1076.
Considering these federal court precepts and the established law concerning the attorney-client privilege in our own jurisdiction, it is clear that only those communications made for the purpose of obtaining or acting upon legal advice should be protected. If the predominant purpose of the communication, therefore, was to provide business advice, analysis, or strategy, it will not be protected by the attorney-client privilege. Of course, if a communication contains both legal and non-legal advice, the burden is on the proponent of the privilege to establish that it was made for the purpose of obtaining legal advice.
Again, the defendants should review this category of disputed documents in light of these precepts and produce any non-privileged documents to the plaintiffs. To the extent that they continue to claim that any such documents are protected by the attorney-client privilege, defendants must provide further factual and legal support for their claims that any legal advice in such documents predominates over any business advice and is not merely incidental to it.
6. Issues of Waiver of the Attorney-Client Privilege
Before moving on to the final category of disputed documents with respect to which the defendants assert the work product privilege, this Court must address the argument of waiver raised by the plaintiffs. Plaintiffs contend that the defendants implicitly waived any attorney-client privilege that may have existed with respect to the disputed documents because the content of the legal advice contained in those communications is so integral to the outcome of the legal claims in this action. In this regard, however, the plaintiffs' reliance onMortgage Guar. Title Co. v. Cunha, 745 A.2d 156, 159 (R.I. 2000), is misplaced. The type of waiver discussed in that case would apply typically to situations where a party specifically pleads, as an element of the claim, his or her reliance on an attorney's advice or voluntarily testifies regarding portions of the actual advice contained in the communication or places in issue the nature of the attorney-client relationship during the course of the litigation. Id. at 159. In fact, our Supreme Court specifically held that, to find a waiver, a court must be "satisfied that a party has waived the right to confidentiality by placing the content of the communication directly in issue and [that] the issue cannot be determined without an examination of that advice."Id.
The case at bar is distinguishable from the Supreme Court's decision in Mortgage Guar. Title Co. v. Cunha, supra, because, in that case, a waiver had to be implied in order to proceed with the litigation. In fact, a careful reading of the court's decision reveals that the waiver rule discussed in that case would apply typically in attorney-client malpractice actions. There is simply no evidence here indicating that the plaintiffs relied on any information given by the defendants' attorneys. Simply arguing that the information contained in privileged communications may be important to the outcome of the case, as the plaintiffs suggest, does not place the content of the communication directly in issue. There is a vast difference between claiming that privileged information may be helpful to an adversary in pursuit of its claim and determining that there would be no case at all without a waiver because the content of the privileged communications are themselves the subject of the dispute. This Court finds, therefore, that the plaintiffs have failed to substantiate their overbroad claims of waiver here.
B. ISSUES OF WORK PRODUCT PRIVILEGE
 Whether Certain Disputed Documents are Protected by the WorkProduct Privilege
The final issue raised by the plaintiffs concerns the work product privilege. Under that doctrine "[a] party shall not require a deponent to produce or submit for inspection any writing obtained or prepared by the adverse party, his attorney . . . in anticipation of litigation . . . unless . . . a denial of production or inspection will result in an injustice or undue hardship. . . ." Cabral v. Arruda, 556 A.2d 47, 49
(R.I. 1989) (emphasis added). Additionally, R.I. Sup. Ct. R. Civ. P 26 (b)(3), entitled "Trial Preparation," states:
 a party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
Thus, although the work product doctrine does not provide an absolute privilege, von Bulow, 475 A.2d at 1009, at its core, "it shelters the mental processes of the attorney, providing a privileged area within which he or she can analyze and prepare his or her client's case."See State v. DiPrete, 710 A.2d 1266, 1286 n. 13 (R.I. 1998).
As applied to the case at bar, to the extent that the documents in question do not qualify for the attorney-client privilege, they may be protected by the work product privilege. Defendants may invoke this claim of privilege, however, only to the extent the disputed documents were prepared in anticipation of litigation. They should undertake a review of this category of disputed documents to ensure that they were so prepared and identify the authors of such documents and any non-privileged information about them, to the extent they have not done so already. Assuming, for the sake of argument, that the defendants have properly invoked the work product privilege as to these documents in dispute, the plaintiffs have failed, at this juncture, to meet their burden of establishing substantial need and undue prejudice, as they simply have not demonstrated their inability to obtain the information by other means, including other discovery options, such as interrogatories or depositions. Further factual and legal argument from both parties, therefore, may be necessary for this Court to resolve any remaining issues as to this category of disputed documents.
 CONCLUSION
The defendants are ordered to review the disputed documents in light of this Decision. The defendants must produce to plaintiffs any documents that are not privileged. If the defendants continue to claim that any of these documents are privileged, they are ordered, where possible, to redact the privileged portions of the documents and to produce to the plaintiffs redacted documents. To this extent, plaintiffs' motions to compel production of documents are granted.
As to any remaining issues of privilege, the defendants shall provide to the plaintiffs, and the plaintiffs shall provide to the defendants, any additional factual and legal arguments to support their respective positions. Both parties must meet and confer to attempt to resolve any remaining issues as to the disputed documents before asking this Court for further hearing. This Decision is rendered without prejudice to the plaintiffs' right to renew their motions to compel production of documents, the defendants' right to invoke claims of privilege consonant with this Decision, or either plaintiffs' or defendants' right to seek an in camera review of limited documents after they both have taken the steps outlined by this Court in this Decision.
Counsel shall confer and submit to this Court forthwith for entry three separate agreed upon forms of order, for filing in each case, which are consistent with this Decision. The order shall contain agreed upon dates for compliance with the terms of order outlined by the Court in this Decision.